Robert S. Green (State Bar No. 136183)
Jenelle Welling (State Bar No. 209480)
Charles D. Marshall (State Bar No. 236444)
**GREEN WELLING LLP**
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

**San Jose Division**

| | |
|---|---|
| Lewis Long and Therry Simien, On Behalf of Themselves and all Others Similarly Situated,<br><br>       Plaintiffs,<br><br>    v.<br><br>Hewlett-Packard Co.,<br><br>       Defendant. | Case No. C 06-02816 JW<br><br>**CLASS ACTION**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Lewis Long and Therry Simien on behalf of themselves and all others similarly situated, allege:

**PARTIES**

1.    Plaintiff Lewis Long is a resident of North Carolina. Plaintiff Long purchased an HP Pavilion zt1000 series notebook computer.

2.    Plaintiff Therry Simien is a resident of Texas. Plaintiff Simien purchased an HP Pavilion xz100 series notebook computer.

3.    Defendant Hewlett-Packard Company ("HP") is a California corporation with its principal place of business in Palo Alto, California.

**JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT**

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs and is a class action in which Plaintiffs are a citizens of a state different from the Defendant. Based on the nature of the product and its distribution, Plaintiffs are informed and believe that less than one-third of the members of the proposed class are citizens of California.

5. Venue is proper in this District because Defendant's headquarters are in this district, Defendant systematically and continuously does business in this district, and a substantial part of the events or omissions occurred in this district.

6. Assignment to the San Jose Division of the United States District Court for the Northern District of California is proper because the action arises in the County of Santa Clara, where Defendant resides.

**SUMMARY OF CLAIMS**

7. HP manufactures, sells, and services computers. Among the computers manufactured and sold by HP is the Pavilion notebook series (collectively, the "Pavilion"). HP primarily markets the Pavilion to consumers (as opposed to businesses). HP promoted the Pavilion as a "notebook" (i.e. a portable computer, as opposed to a desktop computer), emphasizing its light weight, its thin profile, its battery life, wireless capabilities, and other attributes signaling mobility to the purchaser.

8. The Pavilions at issue here contain defective inverters. An inverter is a circuit that inverts the polarity of a signal or pulse. The inverter converts the low-level voltage supplied by the notebook computer into high-level voltage suitable for the backlight tube, which in turn lights the screen. When an inverter fails, the result is a dark, dim, or flickering display screen. A computer manifesting an inverter failure is essentially useless; either the screen cannot be viewed at all, or the computer must be attached to an external monitor, which destroys the portability that a notebook computer is meant to have.

9. HP is aware of the defect and was aware of the defect before Plaintiffs purchased their computers, but HP did not warn Plaintiffs nor any other Pavilion owners about the notebook's display problems and has not effectively repaired the defect. In fact, HP collected money from hundreds of consumers, sometimes in the hundreds of dollars, to "fix" the defective inverters. In many instances, the "fix" was inadequate and the inverter failed again. HP failed to reimburse consumers who paid to repair their computers or to otherwise make them functional (such as by buying an external monitor), and has not compensated consumers in any manner for its failure to provide the benefit of the bargain that consumers struck in purchasing one of HP's "mobile computing solution(s)."

## FACTUAL ALLEGATIONS

**A.   HP Markets the Pavilion as a Reliable, Mobile Product**

10. HP is perceived as a solid company with great products. Reliability is embedded within the name of the company.  Building on this brand image, HP introduced the Pavilion line with the slogan: "It's Not just a PC.  It's an H-P."

11. HP marketed the Pavilion as a reliable and competitively priced "mobile computing solution."  HP characterized the Pavilion as an "ideal companion" that allows notebook owners to "do more on the move." HP emphasized that the computers were "thin and light," again hitting the portability theme.

12. Throughout all of its product descriptions, including in advertisements, technical specifications, and packaging, HP prominently featured the fact that the computers were "notebooks," not desktops. The main attribute of a notebook is its portability.

13. HP stated that the Pavilion "is reliable, versatile, easy-to-use and backed by HP's world-class support and a one-year warranty." In HP's one-year warranty, HP promised "that HP hardware, accessories, and supplies will be free from defects in materials or workmanship after the date of purchase, for [one year]."  HP's also promised in its Limited Warranty that it would repair any computers for any defects for which it was on notice during the one-year period. If HP was unable to repair the product, HP promised that it would refund the purchase price.

14. At no time did HP advertise or otherwise conspicuously state that the notebooks would function as a portable computer for one year only.

15. Consumers paid over $1500 for this "reliable" and "mobile" computer. Based on HP's representations, Pavilion owners reasonably expected that they were purchasing a portable computer, that the portable computer would be free of defects, and that if HP was on notice of a defect, the necessary repairs or replacements to fix that defect would be covered by the warranty and/or repaired by HP at no charge.

16. HP knew at the time it represented the computers as free of defects and as portable computers that those representations were false.

**B.     The Pavilions Contain Defective Inverters**

17. Despite HP's representations, class members' notebooks possess a serious, inherent defect: the inverters prematurely fail rendering the notebook unusable.

18. Pavilion owners experiencing the defect complain of a dark, dim, or flickering display screen. A common workaround is plugging the notebook into an external monitor, but this "solution" deprives class members of the mobility the notebook is meant to provide.

19. The useful life of a notebook is five years. HP's Pavilions were designed to meet this industry standard. This means that after five years, one might expect performance problems due to the natural degradation of component parts. Within five years, however, the failure of a component part is not attributable to its natural life expectancy.

20. The useful life of an inverter is tens of thousands of turn-ons or "boot ups." The useful life of a non-defective inverter far exceeds the five year useful life of a notebook.

21. Class members' inverters are substantially certain to fail within the five year useful life of their computers.

**C.     HP's Knowledge of the Inverter Defect**

22. Because inverters are integral to a portable computer's design, and HP has been designing/manufacturing portable computers for years, HP has substantial knowledge of inverters, their role in notebook functionality, and the manifestations of their failure.

23. Despite its knowledge, HP also has a history of manufacturing portable computers with inverters that are defective and prematurely fail. Thus, HP knows of its persistent problems with inverter failures. Internal correspondence reflects reports, troubleshooting, and efforts to improve flickering and dim displays caused by inverter failure in its notebooks before, during, and after the class period.

24. HP did not successfully remedy the persistent, known inverter failures prior to selling class members' computers. In fact, during the time period in which HP was conducting research and development for the computers at issue, allocation of funds to ensure a robust design were at an all time low. Instead, the unwary consuming public was HP's "beta" test.

25. HP knew or should have known that the inverters in class members' Pavilions would prematurely fail prior to introducing the computers to the marketplace. Indeed, HP engineers predicted LCD failure as a "medium risk" ten months before many of the computer models at issue here were introduced to the public.

26. From 2000 through 2003, HP received thousands of calls and conducted thousands of repairs relating to dim, dark, or flickering displays in the Pavilions.

27. HP's escalation team, which mainly consists of HP's engineers, and includes David Lee and Craig Hornby, both long time HP employees working out of HP's California offices, learned about these failures through HP's call center, factory failures, field failures, internal tests, and repair reports.

28. David Lee reviewed failure reports and interacted with HP's original equipment manufacturer and its authorized repair provider, also located in California, to address the premature inverter failures. He also accessed an intranet where the original equipment manufacturer/repair provider reported factory failure rates and where field failure rates for inverter failures were tracked.

29. The escalation team investigated the nature of the defect and held weekly meetings to determine the scope of the problem, how to address consumers' complaints, and how

to implement repairs addressing the defect. For instance, in early January 2002, HP's internal correspondence shows that engineers were increasingly concerned about reports of dim displays.

30.  The escalation team also issued weekly reports. The "escalated issue" of dim and flickering displays consistently made the escalation reports.

31.  Calls to HP's call center reporting dim, dark or flickering displays, which HP tracked, increased during the class period. In April 2002, LCD complaints comprised 6.8% of *all* calls.

32.  HP determined that the inverters were failing at rates above the level it deemed acceptable and were the cause of the dim, dark, and flickering displays.

33.  It also determined the inverter failures were a "class issue," which an HP employee explained means that the defect applies similarly to all computers within a specified range. This employee explained that once HP identifies a "class issue," its policy is to repair the computers at no charge if the failure occurs within three years.

34.  Despite acknowledging that the inverter's lifespan is unacceptable, HP continues to publicly deny there is anything wrong with the Pavilion notebooks.

35.  Before, during and after HP sold class members' computers, it knew about inverter failures. It also knew that inverter failure rendered a portable computer useless. Despite this superior knowledge, HP both remained silent about what it knew and made affirmative statements in its advertising, technical specifications, and the like that were contradicted by what it knew.

**D.    HP Refuses to Effectively Repair Consumers' Pavilions**

36.  HP's "repair" of the inverters, both in terms of changes made during the manufacturing process as well as attempts to correct field failures, was not adequate. Because its "repairs" did not permanently fix the problem, HP forced many frustrated customers to make repeat shipments to HP, or, worse, left consumers without a functioning notebook all together.

SECOND AMENDED COMPLAINT
Case No. C 06-02816 JW

5

37. If a consumer sends a computer manifesting the defect to HP for repair during its useful life but after the expiration of its written one-warranty, HP will only repair the notebook computer at the consumer's expense, which it quotes as approximately $600.

38. The actual cost of an inverter is much less, approximately $6. Moreover, HP's original equipment manufacturer bore the cost of repair because the inverters failed at a rate higher than was acceptable to HP. Thus, HP actually paid nothing but charged class members.

39. During the relevant period, HP was or should have been aware that the Pavilions were failing at a very high rate. Nevertheless, HP did not warn Pavilion owners of the problem or try to prevent them from suffering display failures and actively concealed from consumers that there was a reliability problem with the inverters that caused display problems. HP failed to warn consumers about the defects inherent in the Pavilion or to effectively remedy the defects inherent in the Pavilion. Despite HP's knowledge of the malfunctions, HP sat silently while consumers purchased the defective notebooks and experienced continuous display problems. HP conceals the known defect from callers to this date. HP never recalled the computers.

40. HP has collected money for repairs, parts, and extended warranty packages from consumers experiencing the defect.

41. HP's policies and conduct have forced some consumers to pay a third party to try to repair the problem.

42. As a result of HP's misconduct, Plaintiffs and the class have been harmed and suffered actual damages in that the Pavilions have and are experiencing failures resulting from the defective inverters, and the Pavilions have failed and will continue to fail well before their expected useful life has run.

43. Plaintiff Long purchased a Pavilion zt1000 series notebook in July 2002. HP knew at the time Plaintiff Long purchased his computer that the inverter was defective and that, as a result, his notebook was substantially certain to fail within its five year useful life.

44. Had Plaintiff known what HP knew, he would not have purchased the Pavilion.

SECOND AMENDED COMPLAINT
Case No. C 06-02816 JW                              6

45. After his purchase, Plaintiff Long's screen began suddenly going dark. Roughly 11 months after he bought the computer, he sent his Pavilion to HP for repairs. HP charged him $70 for shipping. HP's authorized repair provider, Bizcom, located in California, replaced the inverter in his notebook. This was an inadequate repair. HP simply replaced one defective inverter with another. HP knew the replacement inverter was defective.

46. Had Plaintiff Long known that HP was not actually going to repair his computer pursuant to the written warranty that accompanied his purchase, he would not have purchased a computer from HP.

47. Had Plaintiff Long known that HP was not actually going to repair his computer, he would not have paid $70 to ship the computer to HP for "repair."

48. Not surprisingly, four months after HP's inadequate "repair," the inverter failed again. Plaintiff Long again gave notice of his non-conforming good, but HP said it would charge approximately $600 to repair the notebook because the notebook was no longer in warranty.

49. Plaintiff Simien bought a Pavilion xz100 series notebook in the fall of 2002. HP knew at the time Plaintiff Simien bought her computer that the inverter was defective and that, as a result, her notebook was substantially certain to fail within its five year useful life.

50. Had Plaintiff Simien known what HP knew, she would not have purchased the Pavilion.

51. In November 2003, HP received one or more phone calls from Plaintiff Simien reporting that her screen had become dim. She could not use her notebook unless it was plugged into an external monitor. HP told her that they would charge $350-$400 to merely inspect her notebook.

52. Currently, the only way Plaintiffs can use their "mobile" and "reliable" Pavilions is by connecting the "notebook" to an external monitor. Essentially, they can only use their notebooks as desktops. If Plaintiffs had bargained for a desktop computer, they each would have purchased a desktop computer, which are and were at the time much less expensive than a portable computer. As a result of HP's unfair and unlawful conduct, Plaintiffs did not get what

they bargained for. Plaintiffs losses are a direct result of HP's wrongful acts.

## TOLLING OF STATUTE OF LIMITATIONS

53. Any applicable statute of limitations are tolled or have not run because Defendant knowingly and actively concealed and denied the facts alleged herein. Defendant had actual or constructive knowledge of the wrongful courses of action alleged herein. Plaintiffs and class members were kept in ignorance of information essential to the pursuit of these claims, without any fault or lack of diligence on their part. In fact, Defendant fraudulently and deceitfully concealed and misrepresented to the public the material facts alleged herein. Plaintiffs and class members did not discover the facts constituting Defendant's illegal business practices until a date within the limitations period governing this action, and promptly exercised due diligence by filing this complaint. Plaintiffs and class members are not at fault for failing to discover Defendant's misconduct sooner, and had no actual or presumptive knowledge of the facts of Defendant's misconduct to put them on inquiry notice. Plaintiffs and class members could not have reasonably discovered Defendant's misrepresentations and/or material omissions before the filing of this action and, therefore, their claims accrued on that date, and/or any statute of limitations was tolled until that date.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons or entities who purchased an HP Pavilion between January 1, 2000 and December 31, 2003, and who experienced a dim, dark or flickering display within five years of purchasing the computer. Excluded from the class are Pavilion models: zt1150 (product number F3379H), zt1155 (product number F3398H), zt1170 (product number F3380H), zt1175 (product number F3394H), zt1180 (product number F3387H), zt1185 (product number F3399H), zt1190 (product number F3381H), zt1195 (product number F3395H), zt1250 (product number F3424H), xz185 (product number F3386H), xz275 (product number F3397H), and xz295 (F3400H). Also excluded from the class are HP's employees, directors, officers, agents and/or affiliates.

SECOND AMENDED COMPLAINT
Case No. C 06-02816 JW

8

55. Plaintiffs' action meet the prerequisites of Rule 23(a) because:

    a. **Numerosity.** The Class consists of thousands of individuals and is so numerous that joinder of all members as individual plaintiffs is impracticable.

    b. **Commonality.** There are questions of law and fact common to the Class. Such common questions include, but are not limited to:

        i. Whether the Pavilions share one or more common defect(s);

        ii. Whether HP failed to disclose the defect to class members;

        iii. Whether HP sold the Pavilion with a known defect;

        iv. Whether HP's representations created an express warranty;

        v. Whether HP breached its express warranty by selling notebooks that do not function as represented, namely as portable computers;

        vi. Whether HP misrepresented the uses, benefits or characteristics of the Pavilion and/or the services promised in connection with the purchase thereof;

        vii. Whether HP advertised the Pavilion and its concomitant warranty services with the intent not to sell them as advertised;

        viii. Whether HP falsely represented that the Pavilion is of a particular standard, quality or grade when it is of another; and

        ix. Whether HP unfairly deprived consumers of the benefit of their bargain in concealing the inverter defect, misrepresenting the portability of the computers, and/or in collecting money from consumers to repair the known defect.

    c. **Typicality.** As owners of Pavilion notebooks whose screens became dim, dark or flickered, Plaintiffs' claims are typical of the claims of the Class.

    d. **Adequacy.** Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and Plaintiffs engaged competent counsel experienced in class actions and complex litigation.

56. This action is properly maintainable as a class action for the following

independent reasons and under the following portions of Rule 23:

    a.     The prosecution of separate actions by members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications, or substantially impair or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).

    b.     Defendant acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole. Fed. R. Civ. P. 23(b)(2).

    c.     Questions of law and fact common to members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed. R. Civ. P. 23(b)(3).

57.     Whatever difficulties may exist in the management of the class action will be greatly outweighed by the benefits of the class action procedure, including but not limited to providing class members with a method for the redress of claims that may not otherwise warrant individual litigation. By way of example, HP sells inverters to the general public on its website for roughly $20 plus shipping. A class member whose inverter failed and who consequently incurred damage by purchasing a new inverter to replace the defective one would have to pay a $30 filing fee plus pay for service of process to pursue a small claims court action in California against HP. Given these costs, it would be economically irrational for a consumer to pursue the refund of his $20 plus shipping in small claims court, particularly given the time necessary to do so. In addition, a small claims court claimant may not conduct discovery. Thus, consumers may not be able to obtain the evidence necessary to pursue the claims brought here. A single trial in this Court is the most economically feasible and fair approach to resolve the claims arising from HP's conduct.

SECOND AMENDED COMPLAINT
Case No. C 06-02816 JW

10

# FIRST CAUSE OF ACTION

**(Violation of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.)**

58. Plaintiffs incorporate and reallege as if fully set forth below the preceding allegations, and further allege as follows:

59. The Pavilions are "goods" as defined by California Civil Code § 1761(a).

60. HP is a "person" as defined by California Civil Code § 1761(c).

61. Plaintiffs Long and Simien, and class members are "consumers" within the meaning of California Civil Code § 1761(d).

62. Plaintiffs and the class engaged in "transactions" as defined under California Civil Code § 1761(e), including the purchase of Pavilion notebook computers and the presentation of them for repairs.

63. HP violated the CLRA by representing that its goods and services have characteristics, uses or benefits that they do not have. Cal. Civ. Code § 1770(a)(5).

64. HP violated the CLRA by falsely representing that its goods and services are of a particular standard, quality or grade when they are of another. Cal. Civ. Code § 770(a)(7).

65. HP violated the CLRA by advertising its goods and services with the intent not to sell them as advertised. Cal. Civ. Code § 1770(a)(9).

66. HP violated the CLRA by representing that a transaction confers or involves rights, remedies, or obligation which it does not have or involve. Cal. Civ. Code § 1770(a)(14).

67. HP engaged in these unfair or deceptive acts or practices with the intent that they result, and which did result, in the sale of computers and/or services to Plaintiffs and the class.

68. In engaging in unfair or deceptive conduct in violation of the CLRA, HP made affirmative misrepresentations of material facts about the Pavilion notebook computers., *i.e.,* that they are "notebook" computers, the main attribute of which is portability; that they are a reliable mobile computing solution; that they allow the user "to do more on the move;" that HP would deliver a notebook computer free from defects, and that if the computer was defective under normal use within the warranty, that HP would provide an adequate repair or refund the purchase

price.

69. HP actively concealed and intentionally failed to disclose material facts about the Pavilion notebook computers, *i.e.,* that the inverters are defective and prematurely fail, resulting in the need to tether the "portable" notebook into an external video source, eliminating computer's main attribute of portability.

70. The facts that (1) the computers contain a defective component, (2) are substantially certain to fail within their five year useful lives, (3) will lose their functional portability, and (4) contrary to industry standard and consumer expectation, that the computers will only function for a maximum of one year are material in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) the computer.

71. Plaintiffs and class members suffered actual damages as a direct result of HP's affirmative misrepresentations, concealment and/or omissions in violation of the CLRA. Had they known what HP knew about the true character and quality of the computers, Plaintiffs and class members would not have purchased (or would have paid less for) the computers, and would not have agreed to pay for any repairs or services resulting from the defect.

72. To this day, HP continues to violate the CLRA by concealing the defective nature of its Pavilions, misrepresenting to consumers that the notebooks are portable, misrepresenting that repairs were conducted satisfactorily, and representing that restoring visibility to the display screen for a failed inverters costs more than $600 when the true cost is much less than that.

73. Plaintiffs seek an Order enjoining HP from continuing and/or permitting such unfair and deceptive business practices; an Order enjoining HP from collecting money from Class members to repair or replace the defective inverters, an Order requiring HP to repair or replace the defective inverters at no cost to Class members; an Order requiring Defendant to notify Class members of the defective inverters; and an Order awarding fees and costs as allowed under the CLRA. This Complaint serves as notice as required by the CLRA, and Plaintiffs will amend their Complaint to add claims for damages under the CLRA if corrective action is not

1  taken within 30 days.

## SECOND CAUSE OF ACTION

**(Common Law Breach of Express Warranty of Description)**

74. Plaintiffs incorporate and reallege as if fully set forth below the preceding allegations, and further allege as follows:

75. In technical specifications, maintenance and service guides, advertising, and other materials provided on or with Plaintiffs' and class members' computers, HP described the Pavilions as being "notebook" computers. HP elaborated on this description by emphasizing the computers' mobility, weight, size, battery life, wireless capabilities, and other similar attributes which all convey the distinguishing characteristic of portability, particularly vis a vis desktop computers.

76. In the trade in which HP is engaged, this description means that the Pavilions are portable computers and thus, can readily and easily be carried to and will function in a variety of settings, such as in different rooms of a home, in an airport, and in a class room.

77. This description was made a part of the basis of the bargain and created an express warranty that the goods would conform to the description.

78. HP's description qualifies as an express warranty pursuant to California Commercial Code section 2313(1)(b).

79. HP breached the express warranty created by its product description because the Pavilions are rendered useless by the inverter defect and thus incapable of being used as a portable computer. Even if class members get their computers functioning by connecting them to an external monitor, this "solution" still renders the computers incompatible with the mobility HP promised.

80. Under controlling California law, and pursuant to the Official Comments to the Uniform Commercial Code from which Section 2313(1)(b) is drawn, all statements become part of the basis of the bargain unless good reason is shown to the contrary, such that the burden is on HP to prove that the resulting bargain does not rest at all on the description. Alternatively, to the

extent Plaintiffs and class members must prove reliance, their purchases of the Pavilions reflect their reliance on HP's product descriptions.

81. Plaintiffs and class members gave HP notice of its breach of the express warranty created by its product description within a reasonable time of discovering the non-conformity.

82. As a direct and proximate result of HP's breaches of its express warranty, Plaintiffs and class members sustained damages and other losses in an amount to be determined at trial. HP's breaches caused Plaintiffs and class members damage, and as a result, Plaintiffs and class members are entitled to actual damages, "cover" damages, and are entitled to revoke their acceptance of the goods. Plaintiffs and class members also are entitled to attorneys' fees and costs under California Code of Civil Procedure section 1021.5.

## THIRD CAUSE OF ACTION

**(Unlawful Violations of the Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*)**

83. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth herein, and further allege as follows:

84. HP engaged in unlawful acts and practices by:

    a. Violating California Commercial Code section 2313(1)(b);

    b. Violating the Federal Trade Commission Act, Section 5 by misrepresenting the reliability of goods and employing unfair and deceptive practices in the repair of such goods; and

    c. Violating the Consumer Legal Remedies Act.

85. Plaintiffs reserve the right to allege other violations of law which constitute unlawful acts or practices.

86. The injury to consumers is substantial. Computers are an increasingly important tool for members of households of all ages. The expenditure of funds to buy one, particularly a portable one, is not insignificant. Notebook computers are expected to function without catastrophic failure for at least five years. A portable computer is a significant investment for a consumer, particularly for students and households of limited means.

87. HP's failure to disclose its superior knowledge about the inverter failures and its knowledge that the inverters are substantially certain to prematurely fail, rendering the notebooks unusable well before their industry-standard useful life is material information in a consumer's computer purchase decision.

88. There is no countervailing benefit to consumers or to competition to permit HP to manufacture and sell defective computers.

89. The inevitable, premature failure of the inverters could not have been reasonably avoided by consumers. Inverters are an internal component not regularly inspected by consumers prior to purchase, and the defect manifests during normal use of their computers.

90. HP continues to engage in the unlawful practices alleged. HP fails to publicly acknowledge the wrongful nature of its actions. HP has not corrected or publicly issued individual and/or comprehensive corrective notices to Plaintiffs or class members or provided full restitution and disgorgement of all ill-gotten monies acquired or retained by HP as a result thereof. Plaintiffs and class members have an ownership interest in the profits HP received as a result of their purchases and in the monies paid to HP to obtain "repairs" or replacement computers.

91. Accordingly, Plaintiffs seek an Order enjoining HP from continuing and/or permitting such unlawful business acts and practices, an Order providing restitution and disgorgement of profits relating to the sale of the Pavilions and the monies HP collected in connection with consumers who sought repairs for the defect, and injunctive and declaratory relief as may be appropriate. Plaintiffs also are entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure section 1021.5.

### FOURTH CAUSE OF ACTION

**(Unfair Violations of the Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq*.)**

92. Plaintiffs incorporate by reference each of the preceding paragraphs as though fully set forth below, and further allege as follows:

93. HP engaged in unfair acts and practices by:

     a.    deceiving customers into believing they are purchasing computers suitable for mobile computing;

     b.    failing to disclose material information at the time of sale;

     c.    using its superior knowledge to collect monies from consumers to which HP would otherwise not be entitled;

     d.    deceiving customers into believing that should a defect become apparent to HP during the warranty period, that HP will remedy the defect at no cost to Pavilion owners;

     e.    quoting exorbitant sums that bear no relation to the actual cost of repair to consumers, thereby discouraging consumers from pursuing remedies;

     f.    charging consumers to repair a known defect;

     g.    retaining funds previously collected in contravention of internal policies that dictate a free repair for defects HP deems "class issues;"

     h.    replacing one defective inverter with another and representing that the computer is fixed; and

     i.    failing to notify consumers of the inverter defect.

94.    Plaintiffs reserve the right to amend their complaint and assert other unfair conduct.

95.    The harm caused by HP's acts and/or practices outweighs the utility of such conduct and such conduct offends public policy, is immoral, unscrupulous, unethical, deceitful and offensive, and causes substantial injury to consumers.

96.    HP's conduct violates the public policy principles espoused in both federal and state statutes and federal regulations.  For example:

     a.    The Magnuson-Moss Warranty Act was designed to ensure basic protection for consumers purchasing consumer products covered by written warranties, to stimulate the production of more reliable goods, and to provide a basic level of honesty and reliability to such transactions.

       15 U.S.C. §§ 2301-2312.

  b.  The Federal Trade Commission Act, Section 5, recognizes the public policy that misrepresenting the reliability of goods and selling products with known defects is an unfair and deceptive action; and

  c.  The underlying purpose of the CLRA is to "protect consumers against unfair and deceptive business practices[.]" Cal. Civ. Code § 1760;

  d.  California Business & Professions Code § 17500 demonstrates the public policy that it is unfair to advertise the sale of property or services by making untrue or misleading statements.

97. These stated policies seek to protect consumers against unfair practices, including those complained of herein, and provide a sufficient predicate for Plaintiffs' claims.

98. HP continues to engage unfair practices in violation of the UCL.

99. HP fails to publicly acknowledge the wrongful nature of its actions. HP has not corrected or publicly issued individual and/or comprehensive corrective notices to Plaintiffs and class members or provided full restitution and disgorgement of all ill-gotten monies acquired or retained by HP as a result thereof. Plaintiffs and class members have an ownership interest in the profits HP made as a result of their purchases of the computers, and in the monies they spent seeking repairs from HP or purchasing replacement computers.

100. Accordingly, Plaintiffs seek an Order enjoining Defendant from continuing and/or permitting such unfair acts and practices, an Order providing restitution and disgorgement of profits relating to the sale of its Pavilion and monies received from class members' efforts to remedy the defect, and injunctive and declaratory relief as may be appropriate. Plaintiffs also are entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5.

**PRAYER FOR RELIEF**

WHEREFORE, on their own behalf and on behalf of the class, Plaintiffs demand judgment as follows:

A. An Order certifying this action as a class action and appointing Plaintiffs and their counsel to represent the class;

B. An Order enjoining Defendant from continuing and/or permitting such unfair and unlawful business acts and practices;

C. An Order providing restitution and disgorgement of profits related to the sale, repair, and/or replacement of the Pavilion;

D. An Order requiring Defendant to repair or replace the Pavilion;

E. An Order requiring Defendant to compensate Plaintiffs and the class for actual damages suffered;

F. Declaratory relief;

G. Statutory prejudgment interest;

H. Plaintiffs' attorneys fees and costs of suit; and

I. Such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury with respect to all issues so triable.

DATED: February 8, 2007  Respectfully submitted,

**GREEN WELLING LLP**

By: /s/
Charles D. Marshall

Robert S. Green
Jenelle Welling
595 Market Street, Suite 2750
San Francisco, CA 94105
Telephone: (415) 477-6700
Facsimile: (415) 477-6710
cand.uscourts@classcounsel.com

Attorneys for Plaintiffs