HOWARD HOLDERNESS (SBN 169814)
THOMAS R. GREEN (SBN 203480)
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone: 415.442.1000
Facsimile: 415.442.1001
E-mail: tgreen@morganlewis.com
E-mail: hholderness@morganlewis.com

JOHN F. SCHULTZ (PAB 67331) (*Pro Hac Vice*)
ROBERT A. PARTICELLI (PAB 82651) (*Pro Hac Vice*)
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Telephone: 215.963.5000
Facsimile: 215.963.5001
E-mail: john.schultz@morganlewis.com
E-mail: rparticelli@morganlewis.com

Attorneys for Defendant
HEWLETT-PACKARD COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LEWIS LONG AND THIERRY SIMIEN, On Behalf of Himself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY,<br><br>Defendant. | Case No. 06-2816 (JW)<br><br>**DEFENDANT HEWLETT-PACKARD COMPANY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:      March 26, 2007<br>Time:      9:00 a.m.<br>Place:     Courtroom 8, 4th Floor<br>Before:    The Honorable James Ware |

TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 26, 2007, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8 of the above-captioned court, defendant Hewlett-Packard Company ("HP") will, and hereby does, move this Court for an order under Federal Rule of Civil Procedure 12(b)(6), dismissing the causes of action in the Second Amended Class Action

1   Complaint ("Second Amended Complaint") filed by Plaintiffs Lewis Long and Thierry Simien

2   (collectively, the "Plaintiffs").

3          This motion is based, *inter alia*, on the failure by Plaintiffs to comply with the Court's

4   December 21, 2006 Order dismissing their breach of express warranty claim with prejudice, as

5   well as on the Plaintiffs' inability to maintain such a claim because the statements that form the

6   basis of the claim: (1) do not constitute an express warranty; and/or (2) are non-actionable sales

7   talk or puffery. Moreover, Plaintiffs' warranty claim must fail given the clear and conspicuous

8   disclaimer language contained in HP's written warranty contract.  With respect to Plaintiffs'

9   claims under the California Unfair Competition Law ("UCL"), Cal. Bus & Prof Code § 17200 *et*

10  *seq.*, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, Plaintiffs

11  cannot premise those claims on HP's alleged "failure to disclose" the purported defect.  *See*

12  *Daugherty v. American Honda Motor Co., Inc.*, 144 Cal. App. 4th 824 (2d Dist. 2006).   In

13  addition, Plaintiffs' UCL and CLRA claims fail because Plaintiffs: (1) did not allege that HP had

14  pre-sale knowledge of the alleged defect with the particularity required by Federal Rule of Civil

15  Procedure 9(b); (2) have not identified any affirmative misstatements (that are not otherwise non-

16  actionable sales talk or puffery) that could support those claims; and (3) lack standing to pursue

17  a UCL or CLRA claim because neither of them have suffered any actual injury.   Finally,

18  Plaintiffs' UCL claim arising under the "unlawful" prong must be dismissed because the

19  predicate violations listed by Plaintiffs cannot serve as the basis of that claim.

20         HP's motion is based on this Notice, the attached memorandum of points and authorities,

21  the Original Complaint, the Amended Complaints, the Court's records and files in this matter

22  (including its December 21, 2006 order), and any such other evidence and argument that the

23  Court may entertain at any hearing of this matter.

24  Dated:  February 16, 2007          **MORGAN, LEWIS & BOCKIUS LLP**

25

26                                      By:  _____/s/ Robert A. Particelli_____

27                                           Robert A. Particelli (*pro hac vice*)

28                                      Attorneys for HEWLETT-PACKARD COMPANY

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii                          Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

STATEMENT OF ISSUES ..................................................................................................1

STATEMENT OF THE RELIEF SOUGHT ......................................................................2

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................2

I.  INTRODUCTION ..................................................................................................2

II.  FACTUAL AND PROCEDURAL BACKGROUND ...........................................4

   A.  Plaintiff's Original Complaint ...................................................................4

   B.  The Court's December 21, 2006 Order Granting HP's Motion
       to Dismiss With Partial Leave to Amend ..................................................5

   C.  Plaintiffs' Amended Complaints ...............................................................6

III.  STANDARD AND SCOPE OF REVIEW ............................................................7

IV.  ARGUMENT ..........................................................................................................8

   A.  Plaintiffs' Claim For Breach of Express Warranty Must Be
       Dismissed With Prejudice For A Second Time ..........................................8

      1.  Plaintiffs' Claim For "Breach of Express Warranty
          of Description" Is An Inappropriate Attempt To
          Circumvent This Court's Prior Order ............................................8

      2.  Plaintiffs' Warranty Claim Must Be Dismissed
          Because The Statements Cited In The Complaint
          Do Not Constitute an Express Warranty .................................... 12

         a.  "Notebook" Computers ................................................... 12

         b.  Marketing Statements ..................................................... 13

      3.  HP's Limited Express Warranty Disclaims All
          Other Warranties ......................................................................... 14

   B.  Plaintiffs Cannot State A CLRA Or UCL Claim Based Upon
       HP's Alleged "Failure to Disclose" That Certain Inverters
       Are Substantially Certain to Fail During The Useful Life
       of the Notebook Computer ....................................................................... 15

      1.  HP Had No Duty to Disclose That The Allegedly
          Defective Inverters Could Fail During Their
          Useful Life ................................................................................... 16

      2.  Plaintiffs Have Not Alleged HP's Pre-Sale Knowledge
          Of A Defect With the Particularity Required By
          Federal Rule of Civil Procedure 9(b) ......................................... 19

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

C.     Plaintiffs Have Not Identified Any Affirmative Misstatements That Could Support a Claim Under the CLRA or the UCL ............................. 21

     1.     The Statements Identified Are Mere Puffery ............................................ 21

     2.     The Statements In HP's Limited Warranty Are Not Actionable Under The CLRA or UCL ..................................... 22

D.     Plaintiffs Lack Standing to Pursue UCL and CLRA Claims Because Neither Has Suffered An Injury As A Result of HP Conduct That Violates The UCL Or CLRA ................................. 23

E.     Plaintiffs' CLRA Claims Are Barred By The Statute Of Limitations ................................................................. 24

V.     CONCLUSION ........................................................................ 25

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

ii

Case No. 06-2816 (JW)

**TABLE OF AUTHORITIES**

**CASES**

*Abraham v. Volkswagen of America*, 795 F.2d 238 (2d Cir. 1986) ................................10

*Against Gravity Apparel, Inc. v. Quarterdeck Corp.*, 699 N.Y.S.2d 368
(App. Div. 1999)..........................................................................................................10

*Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133 (C.D. Cal. 2005)........ 11, 13, 14, 22

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1988) ....................................7

*Bardin v. DaimerChrysler Corp.*, 136 Cal. App. 4th 1255 (4th Dist. 2006) ..............17, 23

*Branch v. Tunnell*, 14 F.3d 449 (9th Cir. 1994), *overruled on other grounds by*,
*Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002)...............10

*Brothers v. Hewlett-Packard Co.*, No. C-06-02254, 2006 WL 3093685
(N.D. Cal. Oct. 31, 2006)................................................................................. 13, 23, 25

*Brothers v. Hewlett-Packard Co.*, No. C-06-02254 (N.D. Cal. Feb. 12, 2007)...............11

*Camacho v. Automobile Club of Southern California*, 142 Cal. App. 4th 1394
(2d Dist. 2006)...................................................................................................... 18, 25

*Canal Electric Co. v. Westinghouse Electric Co.*, 973 F.2d 988 (1st Cir. 1992)..............9

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351
(2d Dist. 2003)..............................................................................................................22

*Daugherty v. American Honda Motor Co., Inc.*,
144 Cal. App. 4th 824 (2d Dist. 2006).................................................................*passim*

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995)........................................................23

*Haskell v. Time, Inc.*, 857 F. Supp. 1392 (E.D. Cal. 1994) ............................................10

*Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205 (1991)...........................15

*Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494 (1st Dist. 1999)........................................25

*Lopez v. Washington Mut. Bank, F.A.*, 302 F.3d 900 (9th Cir. 2002)..............................25

*McCready v. Am. Honda Motor Co., Inc.*, No. C 05-5247 SBA, 2006 WL 1708303
(N.D. Cal. June 19, 2006) ............................................................................................24

*Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................7

*Osborne v. Subaru of America, Inc.*, 198 Cal. App. 3d 646 (3d Dist. 1988)...................14

*Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001)....................................................................7

*Salyards ex rel. Salyards v. Metso Minerals Tampere Oy*, No. 1:04-CV-05798,
OWW LJO, 2005 U.S. Dist. LEXIS 29360 (E.D. Cal. 2005)......................................15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

*Summit Technology, Inc. v. High-Line Medical Instruments, Co.*,
    933 F. Supp. 918 (C.D. Cal. 1996) ............................................................................14

*Tokar v. Crestwood Imports, Inc.*, 532 N.E.2d 382 (Ill. App. Ct. 1988)..........................10

*Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097 (9th Cir. 2003) ............................5, 7, 8

*Walsh v. Ford Motor Co.*, 588 F. Supp. 1513 (D.D.C. 1984)..........................................10

*Wilens v. TD Waterhouse Group, Inc.*, 120 Cal. App. 4th 746 (4th Dist. 2003) .............23

*Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135 (2d Dist. 1986) ................14

*Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112 (S.D. Cal. 2006)...................12, 22

## STATUTES AND RULES

Cal. Civ. Code §§ 1770..........................................................................................................21

Cal. Civ. Code § 1783...........................................................................................................24

Cal. Com. Code § 1201(10) ..................................................................................................15

Cal. Com. Code § 2313(2) ..............................................................................................13, 14

Cal. Com. Code § 2316..........................................................................................................15

Cal. R. Ct. 8.1105 ....................................................................................................................9

Cal. R. Ct. 8.1115 ....................................................................................................................9

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

## STATEMENT OF ISSUES

1. Whether, by pleading a "breach of express warranty by description" claims, Plaintiffs' failed to comply with the Court's December 21, 2006 Order dismissing their breach of express warranty claims with prejudice?

2. Whether Plaintiffs' "breach of express warranty by description" claim must be dismissed because the statements Plaintiffs contend form the basis of that claim: (a) do not constitute an express warranty; or (b) are non-actionable sales talk or "puffery"?

3. Whether Plaintiffs' "breach of express warranty by description" claim must be dismissed because of the disclaimer language contained in HP's warranty contracts?

4. Whether Plaintiffs' UCL and CLRA claims fail on the ground that HP had no legal duty to disclose that the allegedly defective inverters could fail during the computer's useful life?

5. Whether Plaintiffs' UCL and CLRA claims fail on the ground that Plaintiffs did not allege, with the particularity required by Federal Rule of Civil Procedure 9(b), that HP had pre-sale knowledge of the purported defect?

6. Whether Plaintiffs' UCL and CLRA claims fail because: (a) Plaintiffs did not identify any affirmative misstatements that could support the claims; (b) the statements that form the basis of the claims constitute non-actionable sales-talk or "puffery"; or (c) the statements in HP's written warranty contract cannot serve as the basis for those claims?

7. Whether Plaintiffs' UCL and CLRA claims fail because neither Plaintiff has alleged any actual injury?

8. Whether Plaintiffs' UCL claim arising under the "unlawful" prong must be dismissed because Plaintiffs have not alleged any viable predicate violations?

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

**STATEMENT OF THE RELIEF SOUGHT**

Hewlett-Packard Company ("HP") hereby moves the Court to dismiss with prejudice the Second Amended Complaint filed by Plaintiffs, Lewis Long and Thierry Simien (collectively, the "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Plaintiffs' causes of action for violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*, and for breach of express warranty fail to state a claim upon which relief can be granted.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

In response to this Court's December 21, 2006 Order dismissing their Complaint in its entirety — and, notably, dismissing their breach of express warranty claim *with* prejudice — Plaintiffs have filed an amended complaint that: (1) seeks to circumvent this Court's dismissal of their breach of express warranty claim by recasting the claim as one for "breach of express warranty of description"; and (2) fails to cure the defects that resulted in the dismissal of their initial UCL claim.  Despite the new title bestowed on Plaintiffs' breach of warranty claim and the addition of a CLRA claim, the operative factual allegations remain unchanged:  Plaintiff Simien never notified HP of any display problems with her xz133 notebook computer during the term of HP's one-year Limited Warranty, and HP fulfilled its contractual obligation to Plaintiff Long when his zt1000 model notebook computer began to "dim" or "flicker" by repairing the product so that it operated properly throughout the remainder of the warranty period.  As a result, the ruling reached by this Court should remain unchanged as well, with one exception – this time, *all* of Plaintiffs' claims should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

As noted in this Court's prior dismissal order, the California Court of Appeal's recent decision in *Daugherty v. American Honda Motor Co., Inc.,* 144 Cal. App. 4th 824 (2d Dist. 2006), review denied (Feb. 07, 2007), leaves no dispute as to whether Plaintiffs can assert a claim for breach of express warranty based on defects that manifest themselves after expiration of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

express warranty that governs the contractual relationship between the parties; quite simply, they cannot. Undeterred, Plaintiffs now allege that HP created an "express warranty by description" that is distinct and separate from its Limited Warranty when it described the computers sold to Plaintiffs as "notebook" computers. Plaintiffs contend that by using the term "notebook," HP *expressly warranted* that the computer would not manifest any defects during its "useful life" that would affect the "portability" of the computer.

Plaintiffs' contention, while certainly novel, defies reason. The term "notebook" simply describes the *type* of computer at issue; it constitutes neither a representation regarding the quality of the computer's component parts nor a promise that the computer will operate as designed. The term "notebook" does not promise that a computer will remain "portable" for its "useful life" any more than the term "automobile" constitutes a promise that the vehicle will not manifest any defects during its "useful life" that would affect its "mobility." Plaintiffs' assertion also plainly ignores the language of HP's Limited Warranty, which explicitly states that its "notebook" computers are warranted for one year, not for the "useful life" of the unit. Ultimately, Plaintiffs' "new" breach of warranty claim is simply a contorted way of alleging that they purchased a notebook computer that was not "free from defects in materials and workmanship." This Court has already held that such a claim falls within the scope of HP's Limited Warranty, and dismissed it with prejudice. The Court should do so again.

The basis for Plaintiffs' remaining causes of action for violations of the UCL and CLRA can be grouped into two categories: (1) that HP knew, but failed to disclose, that the zt1000 and xz133 notebook computers sold to Plaintiffs contained inverters that would "prematurely fail" and, as a result, that their notebook computers were "substantially certain to fail during [their] useful [lives];" and (2) that HP made affirmative representations regarding the zt1000 and xz133 notebook computers purchased by Plaintiffs. Neither the "failure to disclose" nor the "affirmative representation" causes of action state a claim upon which relief can be granted.

After *Daugherty*, California law is clear that a plaintiff cannot state a UCL or CLRA claim against a manufacturer for failing to disclose that a product component will "prematurely fail" or that a non-hazardous product is "substantially certain to fail during its useful life," unless

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

the non-disclosure of those facts would be contrary to a representation made by the manufacturer. As in *Daugherty*, the only affirmative representation made by HP to Plaintiffs was that, upon notice, it would repair any defects that manifest during the warranty period; thus, the only justifiable expectation Plaintiffs could have was that HP would repair or replace any defective parts if and when it received notice from Plaintiffs.  There is no dispute that HP complied with that representation.  As a result, even if HP knew that Plaintiffs' zt1000 and xz133 computers contained inverters that were "substantially certain to fail" during their "useful life," it had no duty to disclose that fact, and Plaintiffs' "non disclosure" claims under the CLRA or UCL must be dismissed.

Even if one ignores *Daugherty* and assumes that HP had a "duty to disclose" that the inverters were "substantially certain to fail" during their "useful life," Plaintiffs have again "failed to satisfy Rule 9(b)'s heightened pleading requirement because they do not allege . . . that HP knew of the relevant defects (and made misrepresentations) when Plaintiffs in particular purchased their Pavilions."  December 21 Order, p. 5.  The only non-conclusory allegations in the Second Amended Complaint pertaining to HP's "knowledge" of the alleged inverter defects make general references to LCD and display problems in unidentified HP notebook computers, and make no specific factual assertions regarding the zt1000 and xz133 models purchased by Plaintiffs.  Most importantly, these allegations in no way support the inference that HP knew that those models were "substantially certain to fail" during their "useful life."  For the foregoing reasons, and for the additional reasons set forth in this memorandum, Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     Plaintiffs' Original Complaint.

On April 25, 2006, Plaintiffs Lewis Long ("Long"), a resident of North Carolina, and Therry Simien ("Simien"), a resident of Texas, filed a two-count putative nationwide class action "on behalf of all persons or entities who purchased an HP Pavilion between January 1, 2000 and December 31, 2003."  *See* Original Complaint at ¶¶ 1, 2, 30 attached hereto as Exhibit A.  Although the gravamen of Plaintiffs' UCL claim was that HP sold Pavilion computers to the class

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

with a "known defect," the Complaint did not identify this alleged "known defect." *Id*. at ¶ 36(a). Rather, Plaintiffs set forth the general assertion that the "class members' notebooks possess serious, inherent defects" which "manifest as the display screen 'blacking out' or 'flickering.'" *Id*. at ¶ 13. Plaintiffs further alleged that most Pavilion owners experiencing this alleged defect "complain of a dark, dim, or flickering display screen." *Id*. Although Plaintiffs failed to identify the purported defect, they nevertheless contended that HP knew of the unidentified defect prior to the sale of the allegedly affected computers. *Id*. at ¶¶ 8, 36(a). Plaintiffs also asserted a claim for breach of express warranty on the grounds that HP violated the terms of the one-year Limited Warranty statement accompanying the Pavilion computers purchased by Plaintiffs. *Id*. at ¶¶ 46-52.

Plaintiffs' Original Complaint offered few details regarding their respective experiences with their Pavilion computers. Plaintiff Long alleged that he purchased a Pavilion zt1000 model computer on June 10, 2002 that became "dark" during the one-year warranty period. *Id*. at ¶ 26. Long conceded that HP repaired the notebook in accordance with its warranty obligation, but contended that the display problems recurred outside the warranty period. *Id*. Plaintiff Simien owns a Pavilion xz133 model. *Id*. at ¶ 27. Simien conceded that she did not contact HP regarding any problems with the notebook until two months after her warranty expired. *Id*. When Simien contacted HP regarding a "dim" display screen, HP allegedly informed her it would not repair the notebook free-of-charge because it was no longer covered by the HP Limited Warranty. *Id*.

**B.   The Court's December 21, 2006 Order Granting HP's Motion to Dismiss With Partial Leave to Amend.**

On June 5, 2006, HP filed a motion to dismiss Plaintiffs' Complaint for failure to state a claim upon which relief could be granted. On December 21, 2006, this Court granted HP's motion, and dismissed both of Plaintiffs' causes of action. *See* December 21, 2006 Order attached hereto as Exhibit B. As to Plaintiffs' UCL claim, the Court agreed with HP's contentions that: (1) under *Vess v. Ciba-Geigy Corp., USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) the heightened pleading standards of Rule 9(b) were applicable to allegations set forth by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1   Plaintiffs; and (2) Plaintiffs had failed to plead with the requisite specificity that HP made any

2   representations concerning the Pavilions with knowledge of their falsity, or that HP "knew of the

3   relevant defects (and made misrepresentations) when Plaintiffs in particular purchased their

4   Pavilions."  Order at 4-5.  The Court also dismissed Plaintiffs' UCL claim on the ground that

5   neither Plaintiff had standing to pursue such a claim.  *Id.* at p. 5.  The Court held that "neither

6   Plaintiff has alleged specifically that *their* loss occurred as a result of acts that HP committed in

7   violation of § 17200"; consequently, "Plaintiffs have failed to allege facts sufficient to satisfy §

8   17200's standing requirement.  *Id.* at p. 6.[1]

9        In dismissing Plaintiffs' breach of warranty claim *with* prejudice, the Court noted that

10  because express warranties are contractual in nature, such warranties do not cover defects that

11  manifest after the applicable term of the warranty has expired.  *Id.* at p. 7.  Applied to the facts

12  here, the Court found that HP had satisfied its warranty obligations to Plaintiffs because: (1) HP

13  repaired Plaintiff Long's computer when it allegedly malfunctioned during the term of the

14  warranty; and (2) Plaintiff Simien never contacted HP regarding any defect with her HP computer

15  during the one-year term of the warranty.  *Id.*  Consequently, Plaintiffs could not seek recovery

16  for alleged defects that manifested outside the one-year warranty period; the Court held that "HP

17  could not, as a matter of law, have breached its express warranty by refusing to repair these

18  defects."  *Id.*

19       **C.    Plaintiffs' Amended Complaints.**

20       On January 19, 2007, Plaintiffs filed an amended complaint that again sets forth a claim

21  under the UCL, adds a cause of action under the Consumer Legal Remedies Act ("CLRA") and,

22  despite the Court's dismissal of Plaintiffs' breach of warranty claim with prejudice, reasserts a

23  claim for breach of express warranty.  On February 9, 2007, Plaintiffs filed a Second Amended

24  Complaint that corrected a misstatement in the Amended Complaint, but was otherwise identical.

25  *See* Second Amended Complaint.

26       Plaintiffs' Second Amended Complaint contends that HP violated the UCL and CLRA

27  ───────────────
    [1]    The Court specifically noted that its holding was not predicated on Plaintiffs' failure to allege reliance, but
28  rather "on Plaintiffs' general failure to connect their alleged loss with HP's alleged acts violating § 17200."  *See*
    Order at n.1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6                              Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1   because it failed to disclose that the notebook computers it sold contained inverters that were

2   "substantially likely to fail" during the useful life of the notebook computer.  Although Plaintiffs'

3   Second Amended Complaint attempts to establish HP's general "knowledge" of problems with

4   notebook displays and inverters, Plaintiffs make only conclusory factual assertions regarding

5   HP's knowledge of inverter problems in the zt1000 and xz133 models purchased by Plaintiffs.

6        Plaintiffs also contend that HP made affirmative misrepresentations in violation of the

7   UCL or CLRA; namely, that the computers were "notebook" computers which, according to

8   Plaintiffs (and despite HP's one-year Limited Warranty), constitutes an implicit promise that the

9   computers would be "portable" for their entire usable life.  HP's "notebook" representation is also

10  the basis for Plaintiffs' claim for "breach of express warranty of description," which Plaintiffs

11  contend is distinct from the claim for breach of express warranty dismissed by this Court with

12  prejudice.

13  **III.   STANDARD AND SCOPE OF REVIEW**

14       Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate where there is

15  either a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a

16  cognizable legal theory." *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

17  1988).  Although the Court must accept all factual allegations as true, it does not need to "accept

18  as true unreasonable inferences or conclusory legal allegations cast in the form of factual

19  allegations." *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1112 (C.D. Cal. 2003)

20  (citations omitted).  "[C]onclusory allegations of law and unwarranted inferences are insufficient

21  to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001).

22       A complaint alleging unfair business practices under the UCL or a violation of the CLRA

23  that are "grounded in fraud" must be pled with the particularity required by Federal Rule of Civil

24  Procedure Rule 9(b), regardless of whether fraud is an essential element of the underlying cause

25  of action.  *See Vess*, 317 F.3d at 1103-1105, 1108 (9th Cir. 2003). The relevant inquiry in

26  determining whether a claim is "grounded in fraud" is not whether the complaint uses a "magic

27  word" such as "fraud", "fraudulent" or "misleading"; rather, the dispositive question is whether

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7                           Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1    the allegations describe fraudulent conduct.[2]   *Vess*, 317 F.3d at 1108.   As the *Vess* Court

2    explicitly stated in applying Rule 9(b) to the plaintiff's UCL claims, "[f]raud can be averred by

3    specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word

4    'fraud' is not used)." *Id.* at 1105.

5          Even where a plaintiff chooses to allege *some* fraudulent and some non-fraudulent

6    conduct as a basis for the claim, the allegations regarding fraudulent conduct still must meet the

7    heightened pleading requirements of Rule 9(b). *See id.* at 1104.   Under these circumstances, if

8    particular averments of fraudulent conduct do not satisfy the pleading standards of Rule 9(b), "a

9    district court should 'disregard' those averments, or 'strip' them from the claim.   The court

10   should then examine the allegations that remain to determine whether they state a claim." *Id.*

11   **IV.    ARGUMENT**

12        **A.    Plaintiffs' Claim For Breach of Express Warranty Must Be Dismissed With**
             **Prejudice For A Second Time.**
13

14        Despite this Court's December 21, 2006 Order, which dismissed Plaintiffs' claim for

15   breach of express warranty with prejudice, Plaintiffs' Second Amended Complaint reasserts the

16   barred claim under the title "breach of express warranty of description."   Plaintiffs' "new claim"

17   is simply a repackaged version of the claim dismissed by this Court, and, for this reason alone,

18   should again be dismissed. Plaintiffs' claim, however, must be dismissed for two additional

19   reasons: (1) the alleged HP statements that appear in Plaintiffs' complaint cannot support a claim

20   for breach of warranty; and (2) HP's Limited Warranty Statement disclaims all other express

21   warranties.

22            **1.    Plaintiffs' Claim For "Breach of Express Warranty of Description" Is**
                  **An Inappropriate Attempt To Circumvent This Court's Prior Order.**
23

24        As this Court correctly recognized in dismissing Plaintiffs' breach of warranty claim with

25   prejudice, "[t]he general rule is that an express warranty does not cover a defect that manifests

26   _____

27   [2]      In *Vess*, the Court held that where fraud is not an essential element of a cause of action (as the Ninth Circuit
     has held in regards to UCL and CLRA claims), but the plaintiff alleges "a unified course of fraudulent conduct and
     rel[ies] entirely on that course of conduct as the basis of a claim . . . the claim is said to be 'grounded in fraud' or to
28   'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule (9)(b)."
     *Id.* at 1103-04.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

after the applicable time period has elapsed." *See* Order at p. 7.  In reaching this conclusion, the Court relied upon the California Court of Appeal's recent decision in *Daugherty v. American Honda Motor Co., Inc.*[3]  In *Daugherty*, the California Court of Appeal affirmed the dismissal of UCL, CLRA and breach of warranty claims brought against Honda for its failure to disclose and subsequent refusal to repair a defect in "F22 engines" that resulted in the "dislodgment of the front balancer shaft oil seal" and ultimately caused oil loss, contamination of the engine, and, in some instances, required replacement of the engine.  144 Cal. App. 4th at 827.  The *Daugherty* court held that Honda was not obliged to repair the defect because it manifested after the term of the vehicles' express warranties expired.  *Id.* at 830-32.  In doing so, the court rejected plaintiff's assertions that: (1) Honda's warranty "does not require discovery of the defect during the warranty period," and (2) "a defect that exists during the warranty period is covered [by the express warranty], particularly where it results from an 'inherent design defect,' if the warrantor knew of the defect at the time of the sale."  *Id* at 830.  Focusing on the contractual nature of express warranties, the *Daugherty* court concluded that any claim for breach of warranty is limited by the contractual obligations set forth in the warranty, stating:

> We agree with the trial court that, as a matter of law, in giving its promise to repair or replace any part that was defective in material or workmanship and stating the car was covered for three years or 36,000 miles, Honda "did not agree, and plaintiffs did not understand it to agree, to repair latent defects that lead to a malfunction after the term of the warranty."

*Id.* at 832.  The *Daugherty* holding is consistent with that of numerous courts that have addressed the issue.  *See, e.g., Canal Electric Co. v. Westinghouse Electric Co.*, 973 F.2d 988, 992-93 (1st

---

[3]      Contrary to Plaintiffs' representations to this Court in the Motion for Leave to File Motion for Reconsideration that was filed on January 4, 2007, this Court was acting wholly within its authority in relying on *Daugherty*, a decision that was published for certification by the California Court of Appeal on November 8, 2006.  *See Daugherty*, 144 Cal. App. 4th 824.  The fact that the plaintiff in *Daugherty* filed a petition for review with the California Supreme Court is irrelevant to the question of whether the opinion may be relied upon and cited by this Court.  The California Rules of Court are unequivocally clear that (1) "[a] published California opinion may be cited or relied on *as soon as it is certified for publication* or ordered published," and (2) "an opinion is no longer considered published if the Supreme Court *grants* review or the rendering court grants rehearing."  *See* Cal. R. Ct. 8.1105 and 8.1115 (emphasis added).  Thus, the *filing* of a petition for review is an event of no significance.

     In any event, the California Supreme Court <u>did not</u> grant review of the petition.  On February 7, 2007, the California Supreme Court denied plaintiff's petition for review in *Daugherty*, and also denied the requests filed by the plaintiff and four non-parties to depublish the *Daugherty* opinion.  *See* Order of California Supreme Court, attached hereto as Exhibit C.  Thus, *Daugherty* is unquestionably the law of California.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9                                  Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1  Cir. 1992) ("[C]ase law almost uniformly holds that time-limited warranties do not protect buyers

2  against hidden defects -- defects that may exist before, but typically are not discovered until after,

3  the expiration of the warranty period"); *see also Abraham v. Volkswagen of America*, 795 F.2d

4  238, 241 (2d Cir. 1986); *Walsh v. Ford Motor Co.,* 588 F. Supp. 1513, 1536 (D.D.C. 1984);

5  *Tokar v. Crestwood Imports, Inc.,* 532 N.E.2d 382, 388-89 (Ill. App. Ct. 1988); *Against Gravity*

6  *Apparel, Inc. v. Quarterdeck Corp.*, 699 N.Y.S.2d 368, 369-70 (App. Div. 1999).

7          Post-*Daugherty*, it is clear that Plaintiffs' claims for breach of HP's Limited Warranty

8  cannot survive under California law; Plaintiffs' desperate attempt to avoid the import of the

9  *Daugherty* decision speaks tellingly of its impact on their claims.  *See* Note 3, *supra*.  As a

10  threshold matter, there is no substantive difference between the "repair or replace" warranty used

11  by HP and the warranty at issue in *Daugherty*.  Here, as in *Daugherty*, the contractual relationship

12  between the parties arises out of an express warranty that protects against "defects in materials

13  and workmanship," and which warrants that "[i]f HP receives notice of such defects during the

14  [one year] warranty period, HP will, at its option, either repair or replace products which prove to

15  be defective."[4]  *Compare* HP's Limited Warranty Statement, which is attached hereto as Exhibit

16  D *with Daugherty*, 144 Cal. App. 4th at 830 ("Honda's express warranty to purchasers covered

17  automobiles 'for 3 years or 36,000 miles, whichever comes first,' and stated Honda would 'repair

18  or replace any part that is defective in material or workmanship under normal use . . . .'").

19          Furthermore, as was the case in *Daugherty*, neither Plaintiff can allege that HP: (1) was

20  notified of the existence of a defect that manifested during the warranty period, *and* (2) refused to

21  repair or replace the defective part.  To the contrary, Long concedes that HP repaired his

22  computer in accordance with its warranty obligation, and that the repaired computer operated as

23  warranted until months after the warranty period expired.  *See* Order at p. 7; Complaint at ¶ 26;

24  SAC at ¶ 45.  Simien never contacted HP regarding any alleged defect until after her warranty

25

26  [4]      HP is permitted to attach the limited warranty referred to in Plaintiffs' complaint for consideration by the
Court in order to show that the express terms of the warranty do not support the Plaintiffs' claim.  *See Branch v.*
27  *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by, Galbraith v. County of Santa Clara*, 307
F.3d 1119, 1127 (9th Cir. 2002); *see also Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1398 (E.D. Cal. 1994)
28  (considering exemplars of advertising materials submitted by defendant in support of motion to dismiss).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION TO DISMISS

1   expired, thereby depriving HP of its ability to repair or replace her computer. *See* Order at p. 7;

2   Complaint at ¶ 27; SAC at ¶49.   As a result – and as recognized by this Court in its December 21,

3   2006 Order dismissing Plaintiffs' breach of warranty claims – *Daugherty* requires dismissal of

4   Plaintiffs' claims to the extent they are based on HP's Limited Warranty. *See* Order at p. 7.[5]

5          Cognizant of their inability to state a claim under HP's Limited Warranty, Plaintiffs'

6   Second Amended Complaint attempts to circumvent the Court's prior Order and the holding of

7   *Daugherty* by recasting their dismissed warranty claim as one for "breach of express warranty by

8   description" based on HP's use of the term "notebook computers" and its emphasis on "the

9   distinguishing characteristics of portability . . . ."   SAC at ¶ 75.   Even accepting Plaintiffs'

10  allegations as true, their claim for breach of express warranty by description is indistinguishable

11  from the breach of express warranty claim already dismissed by this Court.   Both claims are

12  premised entirely upon HP's alleged failure to sell a product that is free from defects.

13         Plaintiffs do not contend, for example, that HP breached some specific, qualitative

14  promise regarding their "notebook" computers that is distinct from the promise set forth in HP's

15  Limited Warranty Statement (*i.e.*, that the computer contained a certain amount of memory, or

16  certain size hard drive, or that it contained a specific microprocessor).   Rather, Plaintiffs allege

17  that HP breached its promise that their computers would be "portable notebooks" by selling

18  computers *that were defective in materials and workmanship*. *Id*. at ¶ 79 ("HP breached the

19  express warranty by its product description because the Pavilions are rendered useless by the

20  inverter defect and thus incapable of being used as a portable computer").   In other words,

21  Plaintiffs contend that HP breached its Limited Warranty.

22         There is simply no substantive difference between a claim that HP breached its Limited

23  Warranty by selling a defective notebook computer, and a claim that HP breached a warranty to

24  deliver a "portable" computer by selling a defective notebook computer; both challenge the

25
_____

26  [5]     Plaintiffs undoubtedly will contend that the facts are distinguishable as to Long's computer, which allegedly
    failed again outside the warranty period.  This is a non-sequitur.  HP complied with the terms of its warranty by
27  repairing Long's computer so that it operated properly through the end of the one-year warranty.  *See Annunziato v.
    eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005) (rejecting argument that defect is of a "continuing
28  nature"); *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 at *7  (N.D. Cal. Feb. 12, 2007), attached hereto as
    Exhibit E.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11                                          Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1    allegedly *defective* nature of the product, and, consequently, fall within the scope of HP's one-

2    year Limited Warranty.  Under the holdings of *Daugherty* and this Court's December 21, 2006

3    Order, Plaintiffs' breach of warranty by description claims are barred by the time limitation in the

4    Limited Warranty and must be dismissed.

5            **2.    Plaintiffs' Warranty Claim Must Be Dismissed Because The**
             **Statements Cited In The Complaint Do Not Constitute An Express**
6            **Warranty.**

7                    **a.    "Notebook" Computers**

8            Plaintiffs' breach of warranty by description claim also fails because they have not

9    identified any HP representations that could conceivably constitute an express warranty.  HP's

10   use of the term "notebook" does not, as Plaintiffs allege, constitute an affirmation of fact that

11   such a computer will be defect-free and/or "portable" beyond the term of the Limited Warranty;

12   to the contrary, "notebook" is a generic term used simply to identify the type of computer at issue.

13   *See Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1118 (S.D. Cal. 2006) (dismissing with

14   prejudice breach of warranty claim where the term "fruit juice" was found to be truthful and non-

15   actionable puffery).

16           In fact, the HP Limited Warranty explicitly refutes Plaintiffs' contention by stating that

17   "HP Pavilion and Omnibook XE Series *Notebooks* typically come with a standard one year

18   warranty.   Please see the Warranty Duration table for more details."  *See* Exhibit D (emphasis

19   added).   The term "notebook," therefore, could not reasonably be interpreted by Plaintiffs as

20   warranting anything other than what is promised in HP's one-year Limited Warranty — that HP

21   would repair or replace any defective notebook computers for which it receives notice before the

22   end of the warranty period.[6]

23           In any event, there is no dispute that Plaintiffs did in fact receive "notebook" computers

24

25   [6]     Although Plaintiffs assert that HP elaborated on the "notebook" description by "emphasizing the computers'
     mobility, weight, size, battery life, wireless capabilities, and other similar attributes which all convey the
26   distinguishing characteristics of portability, particularly vis-a-vis desktop computers," these are all simply variations
     on the theme that  HP sold Plaintiffs "notebook" computers, and that the term "notebook" implied "portability" for a
27   period extending beyond the term of HP's warranty.  Plaintiffs do not allege that their computers' mobility, weight,
     size, battery life, and wireless capabilities were different than was represented by HP.
28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12                                          Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1   from HP.  Nor is there any dispute that HP repaired Plaintiff Long's computer in accordance with

2   the terms of its Limited Warranty when he complained to HP regarding a dim display screen, and

3   that the repaired computer operated in a "portable" fashion until four months after the expiration

4   of HP's warranty.  Complaint at ¶ 26, SAC at ¶ 45.  Similarly, there is no dispute that Plaintiff

5   Simien did not experience a dimming of her screen to the point of needing to use an external

6   monitor until "two months after her warranty expired" and, as a result, never contacted HP during

7   the warranty period to complain about "portability" problems.  Complaint at ¶ 27; SAC. at ¶ 51.

8   For these reasons, Plaintiffs cannot, as a matter of law, establish a claim for breach of express

9   warranty based upon HP's use of the term "notebooks."

### b.    <u>Marketing Statements</u>

11       The remaining alleged HP statements set forth in the Second Amended Complaint cannot,

12   as a matter of law, support a claim for breach of warranty by description. CAL. COM. CODE §

13   2313(2) ("[A]n affirmation merely of the value of the goods or a statement purporting to be

14   merely the seller's opinion or commendation of the goods does not create a warranty").  Plaintiffs

15   contend, for example, that: "HP marketed the Pavilion as a reliable and competitively priced

16   'mobile computing solution;'" "HP characterized the Pavilion as an 'ideal companion' that allows

17   notebook owners to 'do more on the move;'" and "HP emphasized that the computers were 'thin

18   and light'…." SAC at ¶ 11.  California law is clear that such generalized, vague and unspecific

19   statements constitute mere puffery upon which a reasonable consumer could not rely.  *See* CAL.

20   COM. CODE § 2313(2); *Annunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal.

21   2005) (granting motion to dismiss unfair competition claim); *see also Brothers v. Hewlett-*

22   *Packard Co.*, No. C-06-02254, 2006 WL 3093685, at *4-5 (N.D. Cal. Oct. 31, 2006).

23       The *Annunziato* case, which also involved the sale of allegedly defective laptop

24   computers, proves instructive.  The *Annunziato* Court held that statements in the manufacturer's

25   laptop user manual regarding the computer's "quality," "reliability," "performance," and "latest

26   technology" constituted mere puffery because they were "incapable of objective verification,"

27   "not expected to induce reasonable consumer reliance," and not "factual representations about

28   important characteristics like a product's safety." 402 F. Supp. 2d at 1140 (citation omitted). The

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1    alleged HP slogans forming the basis of Plaintiffs' claims here are indistinguishable from the

2    non-verifiable statements rejected in *Annunziato*.  General assertions that the Pavilion is the

3    "ideal companion" or "reliable" are incapable of objective verification and do not create any

4    expectations in the eyes of a consumer as a matter of law.  *See Annunziato*, 402 F. Supp. 2d at

5    1140.  Nor are HP's alleged statements "factual representations about important characteristics,"

6    like HP's laptop computer safety.  *Id.*; *see also Osborne v. Subaru of America, Inc.*, 198 Cal. App.

7    3d 646, 660 (3d Dist. 1988) ("Sellers are permitted to 'puff' their products by stating opinions

8    about the quality of the goods so long as they do not cross the line and make factual

9    representations about important characteristics like a product's safety."); Cal. Com. Code §

10   2313(2).[7]

11        Moreover, Plaintiffs have not pled any facts which would prove these statements to be

12   false.  Plaintiffs do not contend their notebooks were not "thin and light" or that the computers

13   were not "mobile" during the warranty period.  Furthermore, neither Long nor Simien allege that

14   they read, acknowledged or relied upon these statements, nor do they allege how these statements

15   formed the "basis of the bargain" with respect to them; as a result, Plaintiffs' warranty claim

16   should be dismissed.  *See Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (2d

17   Dist. 1986) ("In order to plead a cause of action for breach of express warranty, one must allege

18   the exact terms of the warranty, *plaintiff's reasonable reliance thereon*, and a breach of that

19   warranty that proximately causes plaintiff's injury") (emphasis added).

20        **3.      HP's Limited Express Warranty Disclaims All Other Warranties.**

21        Plaintiffs' breach of express warranty by description claim also fails because HP's

22   Limited Warranty contains the following prominently-displayed disclaimer:

23           TO THE EXTENT ALLOWED BY LOCAL LAW, THE ABOVE
             WARRANTIES ARE EXCLUSIVE AND NO OTHER WARRANTY OR
24           CONDITION, WHETHER WRITTEN OR ORAL, IS EXPRESSED OR
             IMPLIED….
25
             TO THE EXTENT ALLOWED BY LOCAL LAW, THE REMEDIES IN
26

27   _____
     [7]     This Court should not hesitate to dismiss a cause of action grounded in puffing slogans.  "[T]he Ninth
     Circuit has expressly authorized the use of the 12(b)(6) motion to dismiss to determine whether or not a statement is
28   non-actionable puffery."  *Summit Technology, Inc. v. High-Line Medical Instruments, Co.*, 933 F. Supp. 918, 931
     (C.D. Cal. 1996).

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

14

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

THIS WARRANTY STATEMENT ARE YOUR SOLE AND EXCLUSIVE REMEDIES.

(emphasis in original).  Such disclaimers are valid under California law so long as they are "conspicuous," which requires that it "is so written that a reasonable person against whom it is to operate ought to have noticed it." CAL. COM. CODE § 1201(10).  The disclaimer in HP's warranty clearly meets this standard; consequently, Plaintiffs' breach of warranty claim must fail because HP disclaimed any "warranty" created by virtue of the extra-contractual statements identified by Plaintiffs. *Salyards ex rel. Salyards v. Metso Minerals Tampere Oy*, No. 1:04-CV-05798 OWW LJO, 2005 U.S. Dist. LEXIS 29360, at *27 (E.D. Cal. 2005) ("A defendant can exclude express and implied warranties if the disclaimer is conspicuous."); *Krieger v. Nick Alexander Imports, Inc.*, 234 Cal. App. 3d 205, 212-13 (1991) ("A seller is permitted to limit its liability for defective goods by disclaiming or modifying a warranty."); CAL. COM. CODE § 2316.

## B. Plaintiffs Cannot State A CLRA Or UCL Claim Based Upon HP's Alleged "Failure To Disclose" That Certain Inverters Are Substantially Certain To Fail During The Useful Life of the Notebook Computer.

In dismissing Plaintiffs' UCL "failure to disclose" claim with leave to amend, this Court held that Plaintiffs "failed to satisfy Rule 9(b)'s heightened pleading requirement because they do not allege…that HP knew of the relevant defects (and made misrepresentations) when Plaintiffs in particular purchased their Pavilions." Order at p. 5.  Plaintiffs' Second Amended Complaint reasserts the dismissed UCL claim, and adds a claim under the CLRA.  Both are premised upon allegations that HP knew, but failed to disclose, that the notebook computers sold to Plaintiffs contained inverters that would "prematurely fail" and, as a result, that their notebook computers were "substantially certain to fail during its useful life." *See* SAC at ¶ 25, 45; *see also* SAC at ¶¶ 64, 69, 70, 71, 87, 96(b).

Plaintiffs' "failure to disclose" claims cannot survive.  After *Daugherty*, California law is clear that a manufacturer cannot be held liable under the UCL or CLRA for failing to disclose that a component will "prematurely fail" or that a product is "substantially certain to fail during its useful life," unless the non-disclosure would be contrary to a representation made by the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

manufacturer.[8]   Where, as here, the sole affirmative representation made regarding a non-hazardous product is that the manufacturer will upon notice repair any defects that manifest during the warranty period – and the manufacturer has in fact repaired those defects – no duty to disclose exists and Plaintiffs' claims under the CLRA or UCL must be dismissed.

Even assuming HP had a "duty to disclose," the handful of purposefully vague allegations added by Plaintiffs to the Second Amended Complaint fail to establish with the specificity required by Rule 9(b) that HP knew the zt1000 and xz133 computer models purchased by Plaintiffs were "substantially certain to fail" during their useful life because of an inverter defect. To the contrary, Plaintiffs' allegations do no more than refer to LCD and display problems generally, and make no specific factual assertion regarding "inverter" problems in the specific models purchased by Plaintiffs.

### 1.     HP Had No Duty to Disclose That The Allegedly Defective Inverters Could Fail During Their Useful Life.

In their Second Amended Complaint, Plaintiffs repeatedly allege that HP violated the CLRA and UCL by failing to disclose that the inverters in their notebook computers were likely to fail during the useful life of certain notebook computers.  Plaintiffs allege that:

- "HP actively concealed and intentionally failed to disclose… that the inverters are defective and prematurely fail…."  SAC at ¶ 69.

- HP failed to disclose "that (1) the computers contain a defective component, (2) are substantially certain to fail within their five year useful lives, (3) will lose their functional portability, and (4) contrary to industry standard and consumer expectation, that the computers will only function for a maximum of one year…."  SAC at ¶ 70.

- "At no time did HP advertise or conspicuously state that the notebooks would function as a portable computer for one year only."  SAC at ¶ 14.

- "HP knew or should have known that the inverters in class members' Pavilions would prematurely fail prior to introducing the computers to the marketplace."  SAC at ¶ 25.

- HP knew at the time Plaintiffs purchased their computers "that the inverter was

---

[8]     In addition, a duty to disclose information independent of any affirmative representation may arise when dealing with a potentially hazardous product. *Daugherty*, 144 Cal. App. 4th at 836.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1   defective and that, as a result, her notebook was substantially certain to fail within its

2   five year useful life." SAC at ¶¶ 43, 49.

3   After the California Court of Appeal's decision in *Daugherty*, none of these allegations, even

4   when accepted as true, can support a claim for non-disclosure under the UCL or CLRA.  In

5   *Daugherty*, the California Court of Appeal made clear that a defendant does not violate the UCL

6   or CLRA by failing to disclose that a product or part is "substantially certain to fail during its

7   useful life," unless the defendant has some "duty to disclose" such information.

8       In addressing plaintiffs' claim that Honda violated the CLRA by "'[c]oncealing and

9   failing to disclose' that the [vehicles] equipped with F22 engines contain a defect, and by

10  continuing to market and sell defective cars notwithstanding knowledge of the defect," the

11  *Daugherty* Court stated that the failure to disclose the existence of a known defect is only

12  actionable when the non-disclosure is "contrary to a representation actually made by the

13  defendant, or an omission of a fact the defendant was obliged to disclose."[9]  *Daugherty*, 144 Cal.

14  App. 4th at 835.   The Court then determined that Honda's sole actionable affirmative

15  representation, its express warranty, did not give rise to a duty to disclose its knowledge that the

16  F22 engine may fail outside the warranty period, stating:

17      Honda's "affirmative representations at the time of sale" were its express
        warranties, as to which no breach occurred [and] no facts are alleged which show
18      Honda "ever gave any information of other facts which could have the likely effect
        of misleading the public 'for want of communication' of" the defect in the F22
19      engine; Daugherty's complaint "did not allege a single affirmative representation"
        by Honda regarding the F22 engine.
20

21  *Daugherty*, 144 Cal. App. 4th at 836-37 (citing *Bardin v. DaimerChrysler Corp.*, 136 Cal. App.

22  4th 1255, 1276 (4th Dist. 2006) (defendant had no duty to disclose its use of tubular steel exhaust

23  manifold which failed much earlier than industry standard iron manifolds).

24      The *Daugherty* Court also rejected plaintiffs' contention that Honda had an independent

25  obligation to disclose its knowledge of the engine defect because the defect constituted an

26  "unreasonable risk."   The Court held that "the 'unreasonable risk' alleged is merely the risk of

27

28  [9]     Like the plaintiff in *Daugherty*, Plaintiffs have asserted claims under sections (a)(5) and (a)(7) of the CLRA,
        and for "unfair" practices under the UCL.

1    'serious potential damages' - namely, the cost of repairs in the event the defect ever causes an oil

2    leak," and that there were no "safety concerns posed by the defect" that would create such a

3    disclosure obligation.  *Daugherty*, 144 Cal. App. 4th at 836.

4           The California Court of Appeal also held that Honda's failure to disclose the existence of

5    the alleged engine defect did not violate the UCL because the non-disclosure was not "likely to

6    deceive" consumers "into believing that no such defect exists."  *Id.* at 838.  The Court concluded

7    that the *only* reasonable expectation a consumer could have was that their vehicle would function

8    properly during the warranty period:

9           "We cannot agree that a failure to disclose a fact one has no affirmative duty to
            disclose is "likely to deceive" anyone within the meaning of the UCL...."  ***The***
10          ***only expectation buyers could have had about the F22 engine was that it would***
            ***function properly for the length of Honda's express warranty, and it did.***  Honda
11          did nothing that was likely to deceive the general public by failing to disclose that
            its F22 engine might, in the fullness of time, eventually dislodge the front balancer
12          shaft oil seal and cause an oil leak.

13   *Id.* (citations omitted) (emphasis added).

14          The Court likewise rejected plaintiffs' claim that Honda's failure to disclose was "unfair"

15   because it was "substantially injurious to consumers."  *Id.* at 839 (citation omitted).  Applying the

16   test for "unfairness" used under Section 5 of the Federal Trade Commission Act and adopted in

17   *Camacho v. Automobile Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2d Dist.

18   2006), the *Daugherty* Court held that plaintiffs had failed to satisfy the first prong of the test, a

19   substantial consumer injury.[10]  The *Daugherty* Court stated:

20          In this case . . . the injury to consumers is not substantial, if indeed it can be
21          characterized as a cognizable injury at all.  In short, the failure to disclose a defect
            that might, or might not, shorten the effective life span of an automobile part that
22          functions precisely as warranted throughout the term of its express warranty
            cannot be characterized as causing a substantial injury to consumers, and
23          accordingly does not constitute an unfair practice under the UCL.

24   144 Cal. App. 4th at 839.

25          As was the case with Plaintiffs' warranty claims, *Daugherty* is again directly on-point and

26

27   [10]      The Court defined the test as follows:  "[a]n act or practice is unfair if the consumer injury is substantial, is
28   not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers
     themselves could reasonably have avoided."  *Daugherty,* 144 Cal. App. 4th at 839.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1   requires dismissal of their non-disclosure claims.  Even accepting Plaintiffs' allegations as true,

2   HP had no duty under California law to disclose that the inverters in certain notebook computers

3   were likely to "prematurely fail" during the "useful life" of their notebook computers.  Such a

4   duty certainly does not arise from HP's affirmative statements.  Plaintiffs' Seconded Amended

5   Complaint fails to cite *any* representation made by HP regarding the inverters in their notebook

6   computers, let alone a representation that HP promised these inverters would operate in an error-

7   free fashion for the "useful life" of their notebook computers.  And as discussed in Section IV.C,

8   the only affirmative representation made by HP regarding Plaintiffs' notebook computers was

9   HP's express warranty representation that it would repair or replace any defective parts of which

10   it is notified during the warranty period; the remaining statements cited by Plaintiffs are either

11   puffery ("'ideal companion," "reliable") or descriptive terms that are subsumed by the HP

12   Limited Warranty ("notebook").  As in *Daugherty*, HP satisfied its warranty obligation as to both

13   Plaintiff Long and Simien.[11]  Because HP had no duty to disclose that the inverters in Plaintiffs'

14   notebook computers were likely to "prematurely fail," Plaintiffs cannot state a claim against HP

15   under the UCL or CLRA for failing to do so.  Their claims must, therefore, be dismissed.

### 2.   Plaintiffs Have Not Alleged HP's Pre-Sale Knowledge Of A Defect With the Particularity Required by Federal Rule of Civil Procedure 9(b).

18        Even assuming HP had some duty to disclose that Plaintiffs' notebook computers

19   contained inverters that rendered them "substantially certain to fail" within their useful lives,

20   Plaintiffs have failed to allege with the specificity required by Rule 9(b) that HP *knew* that the

21   xz133 and zt1000 models purchased by Plaintiffs had such an alleged defect "when Plaintiffs in

22   particular purchased their Pavilions."  Order at p. 5.   Indeed, the only allegations in Plaintiffs'

23   Second Amended Complaint regarding HP's "knowledge" of inverter defects in the notebook

24   computer models purchased by Plaintiffs are the conclusory statements contained in paragraphs

25   43 and 49.  *See* SAC at ¶¶ 43, 49.  These assertions are not sufficient under Rule 9(b) to establish

26   HP's knowledge that the xz133 and zt1000 models contained inverters that rendered them

27   ───────────────

[11]     Nor does HP have some duty to disclose that arises independently of its affirmative statements; Plaintiffs do not suggest that the allegedly failing inverters in their computers constitute a safety hazard.  *See Daugherty*, 144 Cal. App. 4th at 836.

28

19                                          Case No. 06-2816 (JW)

1     "substantially certain to fail" within their useful lives.

2          Plaintiffs' remaining allegations describe HP's "knowledge" of inverter and display

3     screen defects only in the most general fashion, and without identifying which of the scores of

4     notebook computer models sold during the class period these allegations are intended to apply.

5     *See* SAC at ¶¶ 22-35.  Although these allegations are clearly designed to create the *impression*

6     that:  (1) they are applicable to the xz133 and zt1000 models purchased by Plaintiffs; and (2) HP

7     knew that the xz133 and zt1000 models were "substantially certain to fail" within their useful

8     lives, the allegations themselves set forth no specific facts regarding the xz133 and zt1000

9     models, and, more importantly, do not lead to the inference that the xz133 and zt1000 models

10    were "substantially certain to fail" within their useful lives, *or* that HP "knew" it prior to sale.

11         For example, Plaintiffs allege that "HP engineers predicted LCD failure as a 'medium

12    risk' ten months before many of the computer models at issue here were introduced to the

13    public."  SAC at ¶ 25.  Even if true, this allegation does not establish that HP engineers predicted

14    a "medium risk" of LCD failure *in the xz133 and zt1000 models* (presumably Plaintiffs would

15    have alleged so if they had), nor does the fact that HP engineers predicted a "medium risk" of

16    LCD failure in some computers establish HP's knowledge that the xz133 and zt1000 models were

17    "substantially certain to fail" within their useful lives (the term "medium risk" suggests quite the

18    contrary).[12]  Plaintiffs further allege that "HP's internal correspondence shows that engineers

19    [12]    This point is clearly borne out by Plaintiffs' pleading strategy. In Plaintiffs' original complaint, they
20    identified the specific HP notebook computer models they purchased (the zt1000 and xz133), but were unable to
      plead the existence of a defect or HP's knowledge of it with the required specificity; consequently, their UCL claim
21    was dismissed pursuant to Rule 9(b).  Order at p. 5.  Plaintiffs' Second Amended Complaint identifies an alleged
      defect (the inverter) and purports to allege that HP knew of the defect, but, importantly, no longer identifies the
22    specific models purchased by Plaintiff.  Instead, the amended complaint states that Plaintiffs Long and Simien
      purchased "a Pavilion zt1000 *series*" and a "Pavilion xz100 *series*" notebook computer respectively.  SAC at ¶¶ 43,
      49.

23         Why the change to the pleadings?  Because Plaintiffs cannot allege any facts supporting the claim that HP
24    knew the zt1000 and xz133 *models* were "substantially likely to fail" during their "useful life."  They can, however,
      create the misimpression that HP had such knowledge by using distorted facts from the *Rutledge* litigation (where
25    Plaintiffs' counsel also has sued HP) which, not surprisingly, includes notebooks within the zt1000 and xz100 *series*
      in its putative class, but does **not** include the zt1000 or xz133 *models* purchased by Plaintiffs.  *See* Plaintiffs' Notice
26    of Additional Authority, Docket Entry No. 68.  In order to create the misleading impression that those "knowledge"
      allegations apply to the zt1000 and xz133 – and to survive a motion to dismiss – Plaintiffs are required to describe
27    their own computers at the series level, and not by the actual model.  Presumably, if those allegations applied
      specifically to the zt1000 and xz133, there would be no need to describe them at the series level; in fact, one can
28    presume those models would be included in the *Rutledge* class.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

                                                    20                            Case No. 06-2816 (JW)

                                    DEFENDANT'S MOTION TO DISMISS

were increasingly concerned about reports of dim displays" and "LCD complaints comprised 6.8% of all calls."  SAC at ¶¶ 30, 32.  Again, Plaintiffs do not allege that the correspondence and complaints addressed the xz133 and zt1000 models, or that the "concern" of HP engineers reflected their knowledge that the xz133 and zt1000 models were "substantially certain to fail."[13]

### C.   Plaintiffs Have Not Identified Any Affirmative Misstatements That Could Support A Claim Under The CLRA Or The UCL.

In addition to their "failure to disclose" claims, Plaintiffs also allege that HP violated the CLRA and UCL by making affirmative misrepresentations regarding the notebook computers sold to Plaintiffs.[14]   Plaintiffs contend that HP falsely represented Plaintiffs would receive "notebook" computers, that those notebook computers were "ideal companions" that would provide a "reliable mobile computing solution" and would allow them "to do more on the move." *See, e.g.,* SAC at ¶ 68.  Plaintiffs further allege that HP's Limited Warranty misrepresented "that HP would deliver a notebook computer free from defects, and that if the computer was defective under normal use within the warranty, that HP would provide an adequate repair or refund the purchase price."  *Id.*  These allegations cannot support a UCL or CLRA claim because they are neither false, factual in nature, nor likely to deceive a reasonable consumer.

### 1.   The Statements Identified Are Mere Puffery.

As explained in Section IV.A.(2) of this memorandum, representations that a notebook computer is an "ideal companion" and "reliable and competitively priced mobile computing solution[s]" that allows consumers "to do more on the move" are vague and unspecific puffery

---

Simply put, the fact that Plaintiffs' Second Amended Complaint now identifies the **series** of notebook computer purchased by Plaintiffs whereas their original complaint identified the **specific models** purchased within those series (the zt1000 and xz133) can be viewed as no less than a tacit admission that  allegations in Plaintiffs Second Amended Complaint regarding the alleged defect and HP's knowledge thereof do not apply to the *specific models* owned by Plaintiffs.

[13]    The same points can be made regarding Plaintiffs' allegations that: "HP knows of its persistent problems with inverter failures;" "[i]nternal correspondence reflects…efforts to improve flickering and dim displays caused by inverter failures in its notebooks….;" and "[t]he escalated issue of dim and flickering displays consistently made the escalation reports."  SAC ¶¶ 23, 30.

[14]    Plaintiffs assert that HP's representations violated the CLRA "by representing that its goods and services have characteristics, uses, or benefits they do not have," and "by falsely representing that its goods and services are of a particular standard, quality or grade when they are of another."  *See* CAL. CIV. CODE §§ 1770 (a)(5) & (a)(7); SAC ¶¶ 64-65.  Plaintiffs also contend that HP's alleged representations violated the "unfair" prong of the UCL.  *See* SAC ¶ 43.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1  that cannot form an express warranty.  These generalized statements are equally unable to support

2  a claim under the UCL or CLRA.  *See Annunziato*, 402 F. Supp. 2d at 1139 (granting motion to

3  dismiss unfair competition claim); *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1118

4  (S.D. Cal. 2006) (dismissing CLRA claim on puffery grounds); *Consumer Advocates v. Echostar*

5  *Satellite Corp.*, 113 Cal. App. 4th 1351, 1360-61 (2d Dist. 2003) (same).

6      Similarly, the term "notebook" simply describes the *type* of computer at issue; it

7  constitutes neither a representation regarding the quality of the computer's component parts nor a

8  promise that the computer will operate as designed.  Indeed, if Plaintiffs' legal theory were

9  correct, any product that fails during its useful life would give rise to a claim under the UCL or

10  CLRA because it failed to meet the level of quality "implied" by its name (i.e. misrepresenting

11  that a product is a "door" because it fails to open and shut properly, as the name "door" implied it

12  would).

13      Ultimately, Plaintiffs' problem is not with HP's use of the term "notebook" but with the

14  fact that the *particular* notebooks they purchased allegedly manifested a defect.  Under such

15  circumstances, a consumer's proper recourse, if any, is to attempt to pursue a claim under its

16  warranty (which, of course, Plaintiffs cannot do), not to allege that the manufacturer

17  misrepresented that they would receive a "door," or "automobile," or "notebook."

18          **2.**     **The Statements In HP's Limited Warranty Are Not Actionable Under**

19                  **The CLRA Or UCL.**

20      The only representation cited by Plaintiffs in support of their CLRA and UCL claims that

21  is not a slogan or some other non-actionable marketing statements is HP's Limited Warranty.

22  SAC at ¶ 68.[15]  The language of the HP warranty is neither false nor likely to deceive a

23  reasonable consumer.  As noted by the Court in *Brothers* in rejecting an identical claim, "while

24  plaintiff alleges that the Pavilion is not 'free from defects,' the allegations do not support an

25  inference that HP does not *warrant* that the product is free from defects in materials and

26    [15]    HP's Limited Warranty states that "HP warrants . . . that HP hardware, accessories, and supplies will be free

27  from defects in materials and workmanship after the date of purchase for [one year] . . .   If HP receives notice of such defects during the warranty period, HP will, at its option, either repair or replace produces which prove to be defective."  *See* Exhibit D.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S MOTION TO DISMISS

1    workmanship during the Limited Warranty Period.  Rather, the allegations support that HP did

2    repair the alleged problems during the warranty period." *Brothers*, 2006 WL 3093685, at *5.

3         The same analysis and result is required here.  Plaintiffs concede that HP repaired the

4    computer of the only Plaintiff (Long) that actually tendered the computer for repair in the

5    warranty period.  Thus, they have not alleged facts that would establish (if proven) that HP did

6    anything that could be considered deceptive in the context of the warranty language.[16]  The only

7    reasonable interpretation of the Limited Warranty is the one reasonable consumers make with any

8    manufacturer's warranty – that the manufacturer promises to repair, replace or refund a product

9    found to be defective during the warranty period.

10        **D.    Plaintiffs Lack Standing to Pursue UCL and CLRA Claims Because Neither
               Has Suffered An Injury As A Result of HP Conduct That Violates The UCL**

11             **Or CLRA.**

12        As this Court held in its December 21, 2006 Order, the UCL, as amended by Proposition

13   64, requires a person seeking to represent claims on behalf of others to show that (1) he has

14   suffered actual injury in fact, and (2) such injury occurred as a result of the defendant's alleged

15   unfair competition or false advertising.  *See* Order at 5-6.  Similarly, a plaintiff pursuing a claim

16   under the CLRA must allege that he or she suffered an actual injury as a result of the defendant's

17   violation of the statute. *See, e.g., Bardin*, 136 Cal. App. 4th at 1275; *Wilens v. TD Waterhouse*

18   *Group, Inc.*, 120 Cal. App. 4th 746, 753 (4th Dist. 2003).

19        Plaintiffs cannot allege actual injury resulting from any alleged violation of the UCL or

20   CLRA by HP, and therefore lack standing to pursue those claims.   Because HP had no duty to

21   disclose its alleged "knowledge" that Plaintiffs' zt1000 and xz133 model computers were

22   "substantially likely to manifest a defect during the useful life of the product," its alleged non-

23   disclosure could not have violated the statutes, and Plaintiffs could not have suffered an

24   actionable injury in fact.  Furthermore, neither Plaintiff can allege that they suffered any injury as

25   a result of any affirmative statement by HP.  Plaintiffs' Complaint is totally void of any allegation

---

[16]        Whether a representation is likely to deceive a reasonable consumer or not is a question of law, and courts
routinely reject complaints where the alleged fraudulent language lacks the ability to deceive.  *See Freeman v. Time,
Inc.*, 68 F.3d 285 (9th Cir. 1995) (granting motion to dismiss after reviewing allegations of complaint compared to
actual text of allegedly deceptive mailing).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23                                      Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1  that either Plaintiff saw or was aware of the specific representations allegedly made by HP.[17]

2           **E.**    **Plaintiffs' CLRA Claims Are Barred By The Statute Of Limitations.**

3        The statute of limitations for a CLRA claim is three years. CAL. CIV. CODE § 1783. In

4  *McCready v. Am. Honda Motor Co., Inc.*, No. C 05-5247 SBA, 2006 WL 1708303 (N.D. Cal.

5  June 19, 2006), the court held that the plaintiffs' CLRA claims were barred by the limitations

6  period because "Plaintiffs' claims here began to accrue when Plaintiffs had notice or information

7  of circumstances that would have put a reasonable person on inquiry . . . ." *Id.* at *3. In his

8  original complaint, Mr. Long alleges that he purchased his computer in July of 2002 and that

9  "two months after the purchase, the notebook's screen began suddenly going dark." Complaint ¶

10  26. Similarly, Ms. Simien alleges that she purchased her computer in the "fall of 2002" and that

11  "[w]ithin the first few months of purchasing the notebook, the screen began to flicker."

12  Complaint ¶ 27; Amended Complaint ¶ 49. Thus, even if we accept Plaintiffs' "tolling"

13  allegation as true, the latest possible date either of the named plaintiffs should have become aware

14  of the alleged problem was the end of 2002. Because Plaintiffs' original complaint was filed on

15  April 25, 2006, Plaintiffs' CLRA claims are barred by the limitations period: the latest date such a

16  claim could have been brought was the end of 2005.[18]

17           **F.**    **Plaintiffs' Allegations Fail to State An Unlawful Claim Under the UCL.**

18        Plaintiffs' cause of action arising under the "unlawful" prong of the UCL must be

19  dismissed because the predicate violations listed by Plaintiffs cannot serve as the basis for that

20  claim. The UCL borrows violations from other laws and treats them as independently actionable;

21  consequently, an "unlawful" UCL claim fails as a matter of law where there is no violation of a

22  predicate law. *See Lopez v. Washington Mut. Bank, F.A.*, 302 F.3d 900, 907 (9th Cir. 2002)

23

24

25  [17]    Excluding, of course, HP's representation that it was selling a "notebook" computer. However, as stated throughout this memorandum, use of the term "notebook" cannot support a claim under the UCL.

26  [18]    This result is not changed by Plaintiffs' vague and conclusory allegations regarding HP's allegedly
27  "superior" knowledge; indeed, like the Plaintiffs in *McCready*, Plaintiffs have not offered any facts regarding their own purported lack of knowledge or why they did not undertake any further investigation once they were on notice of the problem. *McCready*, 2006 WL 1708303, at *3-4.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24                                                    Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS

1   (citing *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (1st Dist. 1999) ("where there is no

2   predicate violation of underlying statute, Section 17200 claims necessarily fail")).

3        In the present case, Plaintiffs list as their predicate laws that HP violated the: (a)

4   California Commercial Code section 2313; (b) the Federal Trade Commission Act, Section 5; and

5   (c) the CLRA.  *See* SAC ¶ 84.  As set forth in this memorandum, Plaintiffs cannot maintain their

6   UCL claims based on violations of the California Commercial Code section 2313 or the CLRA.

7   *See*, *e.g.*, *Daugherty*, 144 Cal. App. 4th at 836-37 (upholding the demurrer of class plaintiffs'

8   UCL claims on the ground that the predicate violations under the CLRA and breach of warranty

9   were similarly dismissed at the demurrer stage).  Likewise, Plaintiffs cannot establish a predicate

10  claim under Section 5 of the Federal Trade Commission Act.  The Federal Trade Commission

11  applies the same test for unlawfulness that is used by California courts to determine whether

12  conduct is "unfair."  *See Camacho v. Auto. Club of Southern Cal.*, 142 Cal. App. 4th 1394, 1403

13  (2d Dist. 2006); *see also Brothers*, 2006 WL 3093685 at *9 (N.D. Cal. Oct. 31, 2006) (holding

14  that the plaintiffs could not rely on FTC Section 5 as one of the predicate violations supporting

15  their UCL claim).  Plaintiffs have not alleged any conduct that could be considered substantially

16  injurious to consumers.  *See supra* p. 23; *see also Daugherty*, 144 Cal. App. 4th at 837.  As such,

17  Plaintiffs' "unlawful" conduct cause of action must be dismissed.

18  **V.    CONCLUSION**

19       For the foregoing reasons, Plaintiffs' Second Amended Complaint fails to state a claim

20  upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6) of the

21  Federal Rules of Civil Procedure.

22  Dated:  February 16, 2007            **MORGAN, LEWIS & BOCKIUS LLP**

23

24                                    By: _____/s/ Robert A. Particelli_____

25                                         Robert A. Particelli (*pro hac vice*)

26                                    *A*ttorneys for HEWLETT-PACKARD COMPANY

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

25                                    Case No. 06-2816 (JW)

DEFENDANT'S MOTION TO DISMISS