IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Lewis Long, et al.,<br><br>　　　　Plaintiffs,<br>　　v.<br>Hewlett-Packard Co.,<br><br>　　　　Defendant.<br>_____ / | NO. C 06-02816 JW<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION; GRANTING HP'S MOTION TO DISMISS SECOND AMENDED COMPLAINT WITH PREJUDICE; DENYING AS MOOT HP'S MOTION TO STRIKE PLAINTIFFS' CLASS DEFINITION** |

## I. INTRODUCTION

Lewis Long ("Long") and Therry Simien ("Simien") (collectively, "Plaintiffs") bring this diversity action against Defendant Hewlett-Packard Co. ("HP") alleging, *inter alia*, violation of California Business & Professions Code § 17200 et seq. and breach of express warranty resulting from HP's sales of allegedly defective Pavilion notebook computers ("Pavilions") to Plaintiffs. Presently before the Court are (1) Plaintiffs' Motion for Reconsideration, (2) HP's Motion to Dismiss Second Amended Complaint, and (3) HP's Motion to Strike Plaintiffs' Class Definition. The Court found it appropriate to take the matter under submission without oral argument. See Civ. L.R. 7-1(b). Based on the papers submitted to date, the Court DENIES Plaintiffs' Motion for Reconsideration, GRANTS HP's Motion to Dismiss with prejudice, and DENIES as moot HP's Motion to Strike Plaintiffs' Class Definition.

## II. BACKGROUND

Plaintiffs allege the following:

HP sells notebook (portable) computers, including Pavilions. (Class Action Second Amended Complaint ¶ 7, hereafter, "SAC," Docket Item No. 71.) A Pavilion monitor is illuminated by an inverter, the circuit that inverts the polarity of a signal or pulse. (SAC ¶ 8.) That is, the inverter converts the low-level voltage supplied by the notebook computer into high-level voltage suitable for the backlight tube, which in turn lights the screen. Id. The useful life of an inverter is tens of thousands of computer "boot ups." (SAC ¶ 19.) If an inverter fails, the result is a dark, dim, or flickering screen. (SAC ¶ 8.) In order to use a notebook computer with an inverter failure, the computer must be attached to an external monitor, which eliminates its portability feature. Id.

HP's inverters are defective and prematurely fail, rendering the Pavilions unusable without the aid of an external monitor. (SAC ¶¶ 17-18.) Thus, at relevant times, HP's internal correspondence reflected reports, troubleshooting, and efforts to improve flickering and dim displays caused by inverter failure. Id. Even before the release of the Pavilion models at issue, HP's engineers predicted LCD failure as a "medium risk." (SAC ¶ 25.)

After the Pavilions' release, from 2000 to 2003, HP received thousands of calls and conducted thousands of repairs relating to Pavilion display problems. (SAC ¶ 26.) HP's escalation team, consisting primarily of engineers, learned about the inverter failures through HP's call center, factory failure, field failures, internal tests, and repair reports. (SAC ¶ 27.) The escalation team held weekly meetings and issued weekly reports as to the inverter defect. (SAC ¶¶ 29-30.) In January 2002, HP's internal correspondence reflected engineers' increasing concerns about display problems. (SAC ¶ 29.) Thereafter, calls to HP's call center reporting display malfunctions increased; in April 2002, LCD complaints comprised 6.8 percent of all calls. (SAC ¶ 31.) Nonetheless, HP has publically denied that there is any defect in the Pavilion notebooks. (SAC ¶ 34.)

In July 2002, Long purchased a Pavilion zt1000 series notebook. (SAC ¶ 43.) At some point within the first year of his purchase, his Pavilion screen began suddenly going dark. (SAC ¶ 45.) Eleven months after he bought the computer, he sent his Pavilion to HP for repairs. Id. HP's authorized repair provider, Bizcom, replaced the inverter in his notebook. Id. The effect was simply to replace one defective inverter with another. Id. HP knew the replacement inverter was defective. Id. Four months after HP replaced the first defective inverter, the second inverter failed. (SAC ¶ 48.) When Long contacted HP, HP informed him that it would charge approximately $600 to repair the notebook, because the notebook was no longer under warranty. Id.

In Fall 2002, Simien purchased a Pavilion xz100 series notebook. (SAC ¶ 49.) In November 2003, Simien contacted HP to report that her screen was malfunctioning, and that she could not use her screen unless it was plugged into an external monitor. (SAC ¶ 51.) HP told her that they would charge $350-400 merely to inspect her computer. Id.

Both Plaintiffs cannot use their Pavilions without the aid of an external monitor. (SAC ¶ 52.) This deprives them of the use of the notebooks' portability feature. Id.

Plaintiffs commenced this action on April 25, 2006. (See Docket Item No. 1.) On December 21, 2006, the Court granted HP's Motion to Dismiss with partial leave to amend. (See Docket Item No. 55.) On February 8, 2007, the Court granted Plaintiffs' Motion for Leave to File a Motion for Reconsideration as to the Court's dismissal with prejudice of Plaintiffs' breach of express warranty claim. (See Docket Item No. 69.) Also on February 8, 2007, Plaintiffs filed their Second Amended Complaint alleging four causes of action: (1) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (2) common law breach of express warranty of description; and (3-4) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. Presently before the Court are (1) Plaintiffs' Motion for Reconsideration, (2) HP's Motion to Dismiss Plaintiffs' Second Amended Complaint, and (3) HP's Motion to Strike Plaintiffs' Class Definition.

### III.  STANDARDS

**A.     Motion for Reconsideration**

Before a party may file a motion for reconsideration, the party must obtain leave of the court. Civ. L.R. 7-9(a).  The party must demonstrate that (1) a material difference in fact or law exists from that which was presented to the court before entry of the interlocutory order for which reconsideration is sought, and the moving party could not have known said fact or law in the exercise of reasonable diligence at the time of the interlocutory order; or (2) new material facts or a change in law occurred after the issuance of the interlocutory order; or (3) the court manifestly failed to consider material facts or dispositive legal arguments that were presented before the interlocutory order.  Civ. L.R. 7-9(b).  No motion for reconsideration may repeat any argument made in support of, or in opposition to, the interlocutory order which the moving party seeks to have reconsidered. Civ. L.R. 7-9(c).

**B.     Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief can be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.  Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530-, 533-534 (9th Cir. 1984). For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved in favor of the pleading.  Walling v. Beverly Enters., 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause of action.  Papasan v. Allain, 478 U.S. 265, 286 (1986); see also McGlinchy v. Shell Chem. Co., 845 F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. __ , 127 S. Ct. 1955, 1974

(2007). Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by amendment. Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000).

### IV. DISCUSSION

**A.     Plaintiffs' Motion for Reconsideration**

At issue is whether the Court should reconsider its dismissal with prejudice of Plaintiffs' breach of express warranty claim.[1]

The Court previously relied on Daugherty v. Honda Motor Co., Inc., 144 Cal. App. 4th 824, 830 (2006), for the proposition that an express warranty does not cover a defect that manifests after the applicable time period has elapsed. In their First Amended Complaint, Plaintiffs alleged that Long sent his computer to HP during the warranty period, and HP repaired it; the computer again failed several months after the warranty had expired. Plaintiffs alleged that Simien contacted HP about the warranty defects for the first time after the warranty had expired. Reasoning that both Plaintiffs had alleged defects that first manifested after their express warranties expired, the Court found that HP could not, as a matter of law, have breached its express warranty by refusing to repair the defects. Accordingly, the Court dismissed Plaintiffs' express warranty cause of action with prejudice. (Order at 7.)

Plaintiffs now move the Court to reconsider its dismissal with prejudice on the ground that the Court erroneously relied on Daugherty. Plaintiffs contend that (1) Daugherty is factually distinct; (2) the language of the warranty in Daugherty is distinguishable from HP's warranty; and (3) thus, Daugherty is not the legal standard applicable to the facts of this case. (Plaintiffs' Motion at 5-13.)

In Daugherty, plaintiffs were owners of Honda automobiles with an allegedly defective engine. 144 Cal. App. 4th at 827. Plaintiffs alleged that Honda had actual notice that the engines were experiencing severe mechanical problems due to oil leaks, but failed to provide adequate notice

---

[1] (See Order Granting Defendant's Motion to Dismiss with Partial Leave to Amend at 6-7, hereafter, "Order," Docket Item No. 55; Memorandum in Support of Plaintiffs' Motion for Reconsideration at 2, hereafter, "Plaintiffs' Motion," Docket Item No. 76.)

5

1  of the defect to owners of affected models. Id. at 828. The plaintiffs first discovered the defects in
2  their cars after the express warranty term had elapsed (three years following purchase or 36,000
3  miles). Id. at 828-30. The plaintiffs contended that "because the language of Honda's express
4  warranty did not state that the defect must be 'found,' 'discovered' or 'manifest' during the warranty
5  period, the warranty covers any defect that 'exists' during the warranty period, no matter when or
6  whether a malfunction occurs." Id. at 831-32. With respect to the plaintiffs' express warranty
7  claim, the appellate court held:

> We agree with the trial court that, as a matter of law, in giving its promise to repair or replace any part that was defective in material or workmanship and stating the car was covered for three years or 36,000 miles, Honda did not agree, and plaintiffs did not understand it to agree, to repair latent defects that lead to a malfunction after the term of the warranty.

Id. at 832.

Simply stated, it is clear following Daugherty that a plaintiff cannot maintain a breach of warranty claim under California law for a product that is repaired within the warranty period and fails again months after the warranty has expired, or for a product that fails for the first time after the warranty has lapsed. Daugherty, 144 Cal. App. 4th at 830-32; see also Anunziato v. eMachines, Inc., 402 F. Supp. 2d 1133, 1135-36 (C.D. Cal. 2005), Brothers v. Hewlett-Packard Co., No. C 06-2254 RMW, 2006 U.S. Dist. LEXIS 82027 at *25 (N.D. Cal. Oct. 31, 2006) (applying California law). This is for the reasons stated by the Daugherty trial court: "Opening the door to plaintiffs' new theory of liability would change the landscape of warranty and product liability law in California. Failure of a product to last forever would become a 'defect,' a manufacturer would no longer be able to issue limited warranties, and product defect litigation would become as widespread as manufacturing itself." Daugherty 144 Cal. App. 4th at 829 (quoting trial court).

Plaintiff Simien's situation is on all fours with the situation of the Daugherty plaintiffs; she first reported her Pavilion's defect to HP after the express warranty term. The Court finds that the legal standard of Daugherty is clearly applicable to Simien.

1    Plaintiff Long's situation is factually distinguishable from the <u>Daugherty</u> plaintiffs, because
2 he first reported his Pavilion's defect to HP during the express warranty term.  However, HP
3 allegedly repaired the defect by substituting one inverter for another.  Long now alleges in his
4 Second Amended Complaint that HP's repair was inadequate because HP merely substituted one
5 defective inverter for another.  However, HP made three relevant representations in its express
6 warranty.  First, that HP hardware, accessories and supplies "will be free from defects in materials
7 and workmanship after the date of purchase" for a one-year period.  Second, if HP receives notice of
8 a defect during the warranty period, it will, at its option, repair or replace products which prove
9 defective.  Third, HP does not warrant that its products will operate uninterruptedly or free of errors
10 – simply that HP will repair or replace any product to the warranted condition within a reasonable
11 time.  (Declaration of Jenelle Welling in Support of Plaintiffs' Motion for Reconsideration Ex. A,
12 hereafter, "Welling Decl.," Docket Item No. 77.)
13    In this case, HP fulfilled its warranty promises, by providing Long with a computer that was
14 fully operable during the one-year warranty period.  As HP explicitly disclaimed in its warranty,
15 Long's Pavilion did not operate wholly free of errors for the one-year period.  His Pavilion's inverter
16 failed eleven months into the warranty period.  However, HP then tendered an adequate repair of the
17 Pavilion; that is, the Pavilion was again fully operable when HP returned it to Long.  The allegation
18 that the new inverter malfunctioned again several months outside the warranty period is immaterial
19 to Long's breach of express warranty claim.[2]  Accordingly, the Court reaffirms its dismissal of
20 Plaintiffs' breach of express warranty claim with prejudice.

---

[2] This result may differ from that reached in <u>Rutledge, et al. v. Hewlett-Packard Co.</u>, Case No. 1-03-CV-817837, filed in Santa Clara County Superior Court.  Plaintiffs have represented that the California Superior Court in <u>Rutledge</u> certified a class with respect to the plaintiffs' causes of action for breach of express warranty and the Unfair Competition Law, and that the causes of action in that case are identical to those presently before the Court.  The court in the <u>Rutledge</u> case stated, in denying HP's petition to decertify the class, "I think <u>Daugherty</u> is good law but I do not believe that I have a sufficient basis on the facts that are present in this case and a number of unknown facts in this case for me to say <u>Daugherty</u> applies point by point to preclude this matter going forward."  (Notice of Additional Authority in Support of Plaintiffs' (a) Motion for Reconsideration and (b) Opposition to Defendant's Motion to Dismiss, Docket Item No. 96.)  However, nothing in <u>Rutledge</u> alters the Court's interpretation of <u>Daugherty</u>'s relevance to this case.

**B.     Motion to Dismiss**

    **1.     Breach of Express Warranty of Description**

At issue is whether Plaintiffs' Second Cause of Action for common law breach of express warranty of description should be dismissed. Plaintiffs have alleged:

> In technical specifications, maintenance and service guides, advertising, and other materials provided on or with Plaintiffs' and class members' computers, HP described the Pavilions as being "notebook" computers. HP elaborated on this description by emphasizing the computers' mobility, weight, size, battery life, wireless capabilities, and other similar attributes which all convey the distinguishing characteristic of portability, particularly vis a vis desktop computers . . . this description means that the Pavilions are portable computers and thus, can readily and easily be carried to and will function in a variety of settings, such as in different rooms of a home, in an airport, and in a class room . . . HP breached the express warranty created by its product description because the Pavilions are rendered useless by the inverter defect and thus incapable of being used as a portable computer. Even if class members get their computers functioning by connecting them to an external monitor, this "solution" still renders the computers incompatible with the mobility HP promised.

(SAC ¶¶ 75-76, 79.)

The Court has already reaffirmed its dismissal of Plaintiffs' breach of express warranty claim, based on the language of HP's Limited Warranty document. Thus, the issue is whether HP's descriptions of its Pavilions give rise to a separate cause of action.

HP moves to dismiss Plaintiffs' breach of express warranty claim on the grounds that: (1) it represents an inappropriate attempt by Plaintiffs to circumvent the Court's prior order dismissing their express warranty claim with prejudice; (2) the statements cited in the Second Amended Complaint do not constitute an express warranty; and (3) HP's limited express warranty disclaims all other warranties. (Defendant Hewlett-Packard Company's Motion to Dismiss Plaintiffs' Second Amended Complaint at 8-15, hereafter, "HP's Motion," Docket Item No. 80.) The Court need only consider HP's third contention, HP's disclaimer of all warranties other than its Limited Express Warranty.

California law on warranty limitations provides, "Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other, but . . . negation or limitation is inoperative to the

8

1 extent that such construction is unreasonable." Cal. Comm. Code § 2316; see also Krieger v. Nick
2 Alexander Imports, Inc., 234 Cal. App. 3d 205, 212-13 (1991). Since a disclaimer or modification is
3 inconsistent with an express warranty, "words of disclaimer or modification give way to words of
4 warranty unless some clear agreement between the parties dictates the contrary relationship."
5 Hauter v. Zogarts, 14 Cal. 3d 104, 119 (1975). Section 2316 permits a seller to limit its warranty
6 "only by means of words that clearly communicate that a particular risk falls on the buyer." Id.
7 Moreover, any disclaimer or modification is construed strictly against the seller. Id.

In this case, HP's warranty provides:[3]

> TO THE EXTENT ALLOWED BY LOCAL LAW, THE ABOVE WARRANTIES ARE EXCLUSIVE AND NO OTHER WARRANTY OR CONDITION, WHETHER WRITTEN OR ORAL, IS EXPRESSED OR IMPLIED AND HP SPECIFICALLY DISCLAIMS ANY IMPLIED WARRANTIES OR CONDITIONS OF MERCHANTABILITY, SATISFACTORY QUALITY, AND FITNESS FOR A PARTICULAR PURPOSE. Some countries, states, or provinces do not allow limitations on the duration of an implied warranty, so the above limitation or exclusion might not apply to you.

(Welling Decl., Ex. A.) This disclaimer is not inconsistent with the language of the Limited Warranty, because it does not negate the Limited Warranty; rather, it simply limits a purchaser's remedies to those stated in the Limited Warranty. When notified of the defect in Long's Pavilion during the Limited Warranty period, HP corrected the defect such that the computer functioned

---

[3] Although Plaintiffs have not attached the Limited Warranty to the Second Amended Complaint, it was repeatedly referenced throughout the pleading, and the Court considers it in its analysis. (Documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss without converting the motion into one for summary judgment. See Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994) (citing Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n.3 (1st Cir. 1991)).)

1 normally (and was portable) for the remainder of the warranty period.[4]  (HP was not notified of the
2 defect in Simien's Pavilion during the limited warranty period, as previously described.)

3       The Court finds that HP validly disclaimed any express warranty created by virtue of its
4 extracontractual statements identified by Plaintiffs.  Accordingly, the Court grants HP's motion to
5 dismiss Plaintiffs' Second Cause of Action for Breach of Express Warranty of Description with
6 prejudice.

### 2.	Consumer Legal Remedies Act; Unfair Competition Law

8       Plaintiffs make two sets of allegations in support of their Consumer Legal Remedies Act
9 ("CLRA") and Unfair Competition Law ("UCL") claims.  First, they allege that HP made
10 affirmative misrepresentations of material facts about their Pavilions – specifically, (1) that they are
11 "notebook" computers; (2) that they are a "reliable mobile computing solution"; (3) that they allow
12 the user to "do more on the move"; and (4) that the notebook computers would be free from defects.
13 (SAC ¶ 68.)  Second, they allege that, despite HP's representation that it would deliver a notebook
14 computer "free from defects," HP intentionally failed to disclose that its inverters are defective and
15 prematurely fail.  (SAC ¶ 69.)

16       California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1770 et seq., prohibits
17 "unfair methods of competition and unfair or deceptive acts or practices" in transactions for the sale
18 or lease of goods or services to consumers.  Prohibited unlawful practices include: (1) representing
19 that goods have characteristics, benefits or uses that they do not have; (2) representing that goods are
20 of a particular standard, quality or grade if they are of another; (3) advertising goods with the intent

---

[4] Plaintiffs contend that HP's disclaimer is inconsistent with its putative express warranty of portability. (Opposition to Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint at 10, hereafter, "Opposition," Docket Item No. 89.) Assuming *arguendo* that HP created such a warranty, HP fully discharged it by repairing Long's computer when notified of the defect that manifested within the warranty period. The Plaintiffs received the benefit of a portable computer during the one-year warranty period.

If, on the other hand, Plaintiffs contend that HP created an express warranty of portability of indefinite duration, their contention is wholly untenable. It would leave HP susceptible to a breach of warranty claim for every notebook computer which, at any time, required repairs to remain portable.

not to sell them as advertised; and (4) representing that a transaction confers or involves rights, remedies or obligations that it does not have or involve. Cal. Civ. Code § 1770(a)(5, 7, 9, 14).

Under California's Unfair Competition Law ("UCL"), prohibited unfair competition includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Following California's Proposition 64, an individual has standing to sue under § 17200 if they have suffered an injury-in-fact and lost money or property as a result of the unfair competition. Cal. Bus. & Prof. Code § 17204.

### 1.      Affirmative Misrepresentations

#### a.      Mere Puffery

HP contends that each representation that Plaintiffs have identified, apart from the Limited Warranty, is mere puffery. (HP's Motion at 21-22.)

Generalized, vague, and unspecified assertions constitute "mere puffery" on which a reasonable consumer could not rely. Anunziato, 402 F. Supp. 2d at 1139 (citing Glen Holly Entertainment, Inc. v. Tektronix, Inc., 343 F.3d 1000, 1005 (9th Cir. 2003)). For instance, with respect to a satellite television service's representations, the California Court of Appeal found that claims of "crystal clear digital video" and "CD-quality audio" were non-actionable puffery, while representations that customers would receive "50 channels" and a "7-day schedule" were actionable misrepresentations. Consumer Advocates v. Echostar Satellite Corp., 113 Cal. App. 4th 1351 (2003).

In this case, the Court finds that HP's statements that its Pavilions are a "reliable mobile computing solution" and allow the user to "do more on the move" are generalized, non-actionable puffery, because a reasonable consumer would not have relied on such vague statements in making purchasing decisions. Moreover, Plaintiffs' contention that the word "notebook" is actionable is unavailing. The word "notebook" describes the type of product being sold; it does not constitute a

11

1 representation regarding the quality of the computer's parts, nor a representation regarding the
2 consistency or longevity of the computer's operation.[5]

3 Accordingly, the Court finds that Plaintiffs cannot maintain a UCL or CLRA cause of action
4 based on these three misrepresentations.

### b. Limited Warranty Representations

6 Plaintiffs allege that HP affirmatively misrepresented (1) that it would deliver a notebook
7 computer free from defects and (2) if the computer was defective under normal use within the
8 warranty, HP would provide an adequate repair or refund the purchase price. (SAC ¶ 68.)

9 However, Plaintiffs' remaining allegations and the language of the Limited Warranty itself
10 state otherwise. HP warranted that its hardware, accessories and supplies would be free from defects
11 in materials and workmanship for one year. However, HP also clearly stated that it did not warrant
12 uninterrupted or error free operation of its products – simply that it would repair or replace any
13 product to its warranted condition within a reasonable time, or refund the purchase price. (Welling
14 Decl., Ex. A ¶¶ 1, 3.) Only Long notified HP of a defect within the warranty period, and HP
15 tendered an "adequate repair" – specifically, it repaired Long's Pavilion such that it functioned
16 without the need for further repairs to the end of the warranty period and beyond. (SAC ¶¶ 45, 48.)

17 Accordingly, the Court finds that Plaintiffs cannot maintain a UCL or CLRA cause of action
18 based on HP's limited warranty representations.

### 2. Failure to Disclose

20 Plaintiffs allege that HP failed to disclose that the inverters in their notebook computers were
21 defective such that "the notebooks would function as a portable computer for one year only" or that

---

[5] An analogous example is the "automobile." An automobile is commonly understood to be a "motor vehicle," i.e. capable of motor-assisted movement. However, it would strain credibility to contend that an automobile manufacturer has committed an actionable misrepresentation simply by characterizing its product as an "automobile," because, at some point outside the warranty period, the automobile's transmission fails, requiring a replacement transmission at owner-expense before the car is again capable of motor-assisted movement.

12

"the computers . . . are substantially certain to fail within their five year useful lives." (SAC ¶¶ 14, 25, 43, 49, 69-70.)

In Daugherty, the California Court of Appeal considered when a manufacturer's failure to disclose an alleged defect at the time of sale was actionable under the UCL and CLRA. With respect to the UCL, the Daugherty court held that the operative question was whether the failure to disclose was likely to deceive consumers. Absent a manufacturer representation as to the life span of the part in question, the court held, the only expectation that a purchaser could have had was that the product would function properly for the duration of the manufacturer's express warranty. The manufacturer had no duty to disclose that, "in the fullness of time," a given part might eventually fail, necessitating repairs. 144 Cal. App. 4th at 838. With respect to the CLRA, the court found: "[A]lthough a claim may be stated under the CLRA in terms constituting fraudulent omissions, to be actionable the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." Id. at 835.

In this case, HP is not alleged to have made any representation as to the life of its inverter, or even as to the useful life of its Pavilions. As such, a consumer's only reasonable expectation was that the Pavilions would function properly for the duration of HP's limited one-year warranty. HP fulfilled this expectation. Accordingly, HP's alleged failure to disclose the inverter defect is not actionable under either the CLRA or the UCL

The Court has found that none of HP's alleged affirmative misrepresentations or failures to disclose are actionable under the UCL or the CLRA. The Court finds that there is no possibility that Plaintiffs could state actionable violations under either statute if again given leave to amend their complaint. Accordingly, the Court dismisses Plaintiffs' First, Third, and Fourth Causes of Action for violation of the CLRA and the UCL without leave to amend.

**C.    Motion to Strike Class Definition**

In light of the Court's dismissal with prejudice of Plaintiffs' Second Amended Complaint, the Court denies as moot HP's Motion to Strike Plaintiffs' Class Definition.

13

## V.  CONCLUSION

The Court DENIES Plaintiffs' Motion for Reconsideration, GRANTS HP's Motion to Dismiss Plaintiffs' Second Amended Complaint with prejudice, and DENIES as moot HP's Motion to Strike Plaintiffs' Class Definition.

Dated:  July 27, 2007

JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Charles David Marshall CAND.USCOURTS@classcounsel.com
Howard Holderness hholderness@morganlewis.com
Jenelle Welling JWW@classcounsel.com
John F. Schultz john.schultz@morganlewis.com
Meredith Ann Walworth mwalworth@morganlewis.com
Michael J. Holston mholston@morganlewis.com
Robert S. Green RSG@CLASSCOUNSEL.COM
Thomas R. Green tgreen@morganlewis.com

**Dated: July 27, 2007**                               **Richard W. Wieking, Clerk**

                                                       **By:  /s/ JW Chambers**
                                                           **Elizabeth Garcia**
                                                           **Courtroom Deputy**

**United States District Court**
For the Northern District of California